[No. 13955.   In Bank. — February 8, 1892.]

# FRANCIS UNDERHILL, RESPONDENT, *v.* THE SANTA BARBARA LAND, BUILDING, AND IMPROVEMENT COMPANY ET AL., APPELLANTS.

CORPORATIONS — NOTES AND MORTGAGES — CONSIDERATION — FUTURE ADVANCES — FICTITIOUS INDEBTEDNESS. — An indebtedness of a corporation is not fictitious in any sense of the word, where it consists of notes and mortgages executed by the corporation in consideration of money advanced to and paid for the corporation, and property sold and delivered to it by the mortgagee, though but a part of the consideration for each note had been received by the corporation at the date of the note, if the full consideration of the notes was afterward received by the corporation, and that there was no fraud upon the part of the mortgagee.

ID. — CONSTITUTIONAL LAW — "BONDED INDEBTEDNESS" — NON-NEGOTIABLE NOTES. — Non-negotiable notes secured by mortgages executed by a corporation do not constitute "bonded indebtedness" within the meaning of section 11 of article XII. of the constitution, forbidding the increase of the bonded indebtedness of a corporation without sanction of a general law, and consent of a majority of the stockholders called for that purpose on sixty days' notice.

ID. — INDEBTEDNESS IN EXCESS OF CAPITAL STOCK — VALIDITY OF NOTES AND MORTGAGES. — The fact that notes and mortgages were executed by a corporation for indebtedness beyond the subscribed capital stock of the corporation, contrary to the provisions of section 309 of the Civil Code, does not render such notes and mortgages void.

ID. — CONSTRUCTION OF CODE — VALIDITY OF CONTRACTS — POWER OF CORPORATION — REMEDY AGAINST DIRECTORS. — Section 309 of the Civil Code, providing that directors of corporations must not create debts beyond their subscribed capital stock, and making the directors liable for a violation thereof, does not declare that the contracts creating such debts are void, nor deprive the corporation itself of the *power* to create debts beyond its subscribed capital stock, but merely provides a remedy in favor of the corporation and its creditors against the members of the board of directors, by whose improvident or fraudulent exercise of the powers of the *corporation debts are created* disproportionately to the subscribed stock, and beyond the ability of the corporation to pay.

ID. — BY-LAW — PROHIBITION AGAINST INDEBTEDNESS — REPEAL — WAIVER. — A by-law of a corporation providing that the directors shall not incur any indebtedness beyond the amount of capital stock actually subscribed is a creature of the corporation acting through and by its stockholders, and generally for their benefit alone; and the same authority that enacted it may repeal it, or waive its operation.

ID. — VIOLATION OF BY-LAW — ACQUIESCENCE OF SHARE-HOLDERS — RIGHTS OF THIRD PERSONS — GOOD FAITH — NOTICE. — If a course of action contrary to a by-law of a private corporation is acquiesced in by the share-holders, the by-law is thereby waived, and will not affect the rights of persons dealing with the corporation in good faith, even though such persons may be share-holders, if they did not have actual notice of the by-law.

ID. — NOTICE TO SHARE-HOLDERS AND AGENTS OF CORPORATIONS — PRE-
SUMPTION OF LAW. — Where actual notice is necessary, it must be proved
against shareholders and agents, as well as against strangers, by direct
or presumptive evidence, and cannot be imputed by an arbitrary rule of
law.

ID. — RATIFICATION OF ACTS OF DIRECTORS — MEETING OF SHARE-HOLDERS
— ACQUIESCENCE — PRESUMPTION. — Acts of the directors of a corpora.
tion in violation of a by-law may be ratified by the share-holders, and
generally by the same number of share-holders that would be necessary
to enact them; and such ratification need not be formally made in a
meeting of the stockholders, but may be presumed from the circum-
stances of the case, such as long acquiescence in acts beneficial to the
corporation, with knowledge of all the material facts, and may even be
presumed without evidence.

ID. — INQUIRY BY SHARE-HOLDERS — REAPING OF BENEFIT. — The share-
holders of a corporation cannot avoid responsibility for the unauthorized
acts of the directors by abstaining from inquiry into the affairs of the
company, or by absenting themselves from the company's meetings, and
at the same time reap the benefit of their acts in case of success.

ID. — AUTHORITY FROM SHARE-HOLDERS — FINDING — PLEADING — EVIDENCE
OF RATIFICATION. — Evidence tending to prove a ratification by the share-
holders of a corporation of the violation of a by-law by the directors, in
executing notes and mortgages beyond the subscribed capital stock, is
equivalent to evidence of an original authority, and justifies a finding of
original authority, under pleadings tendering an issue as to such author-
ity, and raising no issue as to the probative fact of ratification.

ID. — EXECUTION OF NOTES AND MORTGAGES — IMMATERIAL MISNOMER OF
CORPORATION — CORRECTION BY BODY OF INSTRUMENT — CORPORATE
SEAL. — The fact that the officers of the corporation in executing the
note and mortgage described themselves as the officers of the "Santa
Barbara Land and Improvement Company," omitting from the name of
the corporation the word "Building," does not invalidate the instru-
ments, where it further appears that they attested the execution by the
seal of the corporation; that the body of the note expressed the promise
of the corporation, properly and fully named, to pay, and the mortgage
expressly purported to be the mortgage of the "Santa Barbara Land,
Building, and Improvement Company."

ID. — AUTHORITY OF SECRETARY — BURDEN OF PROOF — EFFECT OF CORPO-
RATE SEAL. — The secretary of a corporation is the proper party to affix
the corporate seal, and it devolves upon the party denying the execution
of the instrument to prove that he had no authority to affix it. The
seal itself is *prima facie* evidence that it was affixed by proper authority.

ID. — SUBJECTION OF SUBSEQUENT MORTGAGE — VALIDITY OF PRIOR MORT-
GAGE — NOTICE — SIMILARITY OF OBJECTIONS. — Where a subsequent
mortgage of a corporation is taken with notice of a prior mortgage, and
is subject to all objections urged against the validity of the prior mort-
gage, it is properly adjudged to be subject thereto.

APPEAL from a judgment of the Superior Court of
Santa Barbara County, and from an order denying a
new trial.

The facts are stated in the opinion.

*Thomas McNulta, J. F. Conroy, D. P. Hatch,* and *C. A. Storke,* for Appellants.

The bonds and mortgages sought to be enforced in this action constitute a "bonded indebtedness" within the meaning of section 11, Article XII., of the constitution, and of section 359 of the Civil Code of California. (1 Debates of Constitutional Convention, 439.) Every obligation under seal for the payment of money is a bond. (2 Am. & Eng. Ency. of Law, 448, and cases cited; 1 Bouvier's Law Dict. 212; 1 Rapalje's Law Dict. 141.) The bonded indebtedness was created in violation of section 11, article XII., of the constitution, and of sections 309 and 359 of the Civil Code of California, and of corporation by-law No. 9, and is therefore illegal and absolutely void. (Herman on Estoppel, sec. 1183, p. 1320; 3 Am. & Eng. Ency. of Law, 872, and cases cited; Taylor on Private Corporations, secs. 207, 298; Bishop on Contracts, sec. 471, p. 180; *Harris* v. *Runnells,* 12 How. 83; *Ahl* v. *Rhoade,* 84 Pa. St. 319; Endlich on Interpretation of Statutes, p. 641, sec. 449; Sedgwick on Statutory and Constitutional Law, 2d ed., 69; *Ewing* v. *Oroville Mining etc. Co.,* 56 Cal. 649; *Scovill* v. *Thayer,* 105 U. S. 143; Greenhood on Public Policy, 541, and cases cited; *Zottman* v. *San Francisco,* 20 Cal. 109; *Bank* v. *Owens,* 2 Pet. 538; Wald's Pollock on Contracts, 253; Jones on Railroad Securities, sec. 312; 2 Morawetz on Private Corporations, 667, 699; *Head* v. *Providence Ins. Co.,* 2 Cranch, 127.) All the provisions of the constitution of the state of California are mandatory and prohibitory, unless by express words they are declared to be otherwise. (Const., art. I., sec. 22.) Section 11 of article XII. of the constitution is prohibitory in its character, and went into full force and effect July 1, 1880. (*Ewing* v. *Oroville M. etc. Co.,* 56 Cal. 649; Const., sec. 1, art. XXII.) The directors of defendant corporation not only acted contrary to the express prohibition of section 309 of the Civil Code, but violated also the express prohibition of

article IX. of the corporation by-laws, fixing the limit to corporate indebtedness beyond which the directors, as agents of the corporation, had no authority to bind the corporation, and their act was *ultra virus*. (2 Morawetz on Private Corporations, sec. 699, and cases cited; *Bean* v. *Pioneer Mining Co.*, 66 Cal. 455; *Hall* v. *Crandall*, 29 Cal. 568, 571, 572; *McCoy* v. *Briant*, 53 Cal. 247, 250.) This by-law was binding on the directors of defendant corporation. (Morawetz on Private Corporations, sec. 500; Taylor on Private Corporations, p. 134, sec. 197; Green's Brice on Ultra Vires, 427, notes. By-law No. 9 was also binding on all persons dealing with the corporation who had notice of its existence. (2 Morawetz on Private Corporations, secs. 593, 594, and cases cited; Taylor on Private Corporations, sec. 197; Civ. Code, sec. 301, and cases cited in Deering's note; 2 Am. & Eng. Ency. of Law, 466 e, and cases cited; Jones on Railroad Securities, sec. 310.) The bonded indebtedness sought to be enforced in this action was created by the directors for objects and purposes foreign to the objects and purposes of defendant corporation, and for that cause said indebtedness is void. (Const., art. XII., sec. 9; *Hall* v. *Auburn Turnpike Co.*, 27 Cal. 256; 2 Morawetz on Private Corporations, p. 667, sec. 699, and cases cited; see also vol. 1, p. 481, sec. 514; Civ. Code, secs. 354, 355, 639–644; *Scoville* v. *Thayer*, 105 U. S. 148; *Pierce* v. *Madison R. R. Co.*, 21 How. 441; *Coleman* v. *San Rafael etc. Co.*, 49 Cal. 517; *Vandall* v. *San Francisco Dock Co.*, 40 Cal. 88; *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 587; *Huntington* v. *Savings Bank*, 96 U. S. 393.) The mortgage executed by the corporation is void, as it was acknowledged by the Santa Barbara Land and Improvement Company, instead of the Santa Barbara Land, Building, and Improvement Company. (*Arthur* v. *Weston*, 22 Mo. 378; *Winter* v. *Stock*, 29 Cal. 407; *Jackson* v. *Cory*, 8 Johns. 385; *Hornbeck* v. *Westbrook*, 9 Johns. 73; *Jackson* v. *Sisson*, 2 Johns. Cas. 321; *Gorset* v. *Kent*, 19 Ark. 607; 1 Devlin on Deeds, sec. 186; *Muskingum Valley R. R. Co.* v. *Ward*, 13 Ohio, 120; 1 Wood on Conveyancing, 162; *Barr* v.

*Schroeder,* 32 Cal. 609.) No action can be maintained on a void contract at law or in equity. (Herman on Estoppel, sec. 1184, p. 1320; Wald's Pollock on Contracts, 253; Bishop on Contracts, secs. 470, 611–615; Green's Brice on Ultra Vires, 608–612; Sedgwick on Statutory and Constitutional Law, 69; *Foulke* v. *San Diego etc. R. R. Co.,* 51 Cal. 365; *Pierce* v. *Madison etc. R. R. Co.,* 21 How. 442; *Thomas* v. *Richmond,* 12 Wall. 356; *Bank* v. *Owens,* 2 Pet. 539; *Welton* v. *Palmer,* 39 Cal. 457; *Watts* v. *Brooks,* 3 Ves. Jr. 612; *Wallace* v. *Mayor etc. of San José,* 29 Cal. 188; *Morton* v. *Timken,* 48 N. J. L. 87.) The contract itself being void, no action was maintainable upon it. The courts can neither make a legal agreement for the parties nor enforce a nullity. The defendant corporation has the right to set up the defense of *ultra vires* in this action. (Taylor on Private Corporations, sec. 297, p. 207, and cases cited; Jones on Railroad Securities, sec. 312, and cases cited; Green's Brice on Ultra Vires, 608–612, and cases cited.) A void contract cannot be ratified so as to bind the corporation. (Taylor on Private Corporations, secs. 266, 269, 297; *Oregon R'y Co.* v. *Oregonian R'y & Nav. Co.,* 130 U. S. 22; *Barr* v. *Schroeder,* 32 Cal. 616; 2 Parsons on Contracts, 7th ed., 807; 1 Randolph on Commercial Paper, p. 526, sec. 374; *McCracken* v. *San Francisco,* 16 Cal. 590; *Zottmann* v. *San Francisco,* 20 Cal. 96; *Branham* v. *Mayor etc. of San José,* 24 Cal. 585; 1 Randolph on Commercial Paper, 526, and cases cited.) The plaintiff is not entitled to claim the benefit of an estoppel in this action. (Herman on Estoppel, p. 14, sec. 20, and cases cited; Williard on Real Estate, p. 369, sec. 3; *Howell* v. *Western R'y Co.,* 94 U. S. 463; *Boggs* v. *Merced Mining Co.,* 14 Cal. 279; *Davis* v. *Davis,* 26 Cal. 23; 4 Am. & Eng. Ency. of Law, 227, sec. 2; 2 Parsons on Contracts, 936, and cases cited in note on marginal page 793, 7th ed.; *Bowman* v. *Cudworth,* 31 Cal. 148; *Burritt* v. *Dickson,* 8 Cal. 113.) Plaintiff has not pleaded estoppel in this action, hence he is not entitled to avail himself of that plea. (*Clarke* v. *Huber,* 25 Cal. 593.)

*Cope & Boyce,* for Respondent.

A deed of an individual as well as a corporation may be signed so that it does not clearly identify the person or the corporation by name, but such a misnomer does not invalidate the act, if from the whole instrument the intention of the parties appears, and the identity can be gathered. (*Middleton* v. *Findla,* 25 Cal. 76; Morawetz on Private Corporations, sec. 354, and cases cited; *Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 543. See Devlin on Deeds, sec. 392; Martindale on Conveyancing, sec. 191; Civ. Code, sec. 357; 2 Kent's Com., 13th ed., 293.) The error committed by the officers of the corporation in omitting the word " Building " from the title of the corporation should be relieved against upon the ground of accident. (1 Story's Eq. Jur., 13th ed., pp. 100–103, 107, secs. 109, and notes; 1 Am. & Eng. Ency. of Law, tit. Accident.) The error of the notary public should be relieved against upon the ground of mistake, and the plaintiff in his amended complaint counts upon that ground as a proper one for such relief. (*Savings etc. Soc.* v. *Meeks,* 66 Cal. 371; *Hutchinson* v. *Ainsworth,* 63 Cal. 286; 73 Cal. 452.) While article IX. of the by-laws might, as between the directors and the corporation, or its stockholders, create a liability against the directors who should do any act contrary to its provisions, it cannot be held to make void a contract entered into by the directors in the name of the corporation. (Morawetz on Private Corporations, sec. 500 a.) The corporation is estopped from setting up the defense of *ultra vires,* the contract being fully executed, and the corporation retaining the benefits. (*Main* v. *Casserly,* 67 Cal. 127; *Sherman etc. Co.* v. *Morris,* 43 Kan. 282; 2 Herman on Estoppel, p. 1314, sec. 1178, and late cases cited in note; Bigelow on Estoppel, 5th ed., 467, note 6; *Daniels* v. *Tearney,* 102 U. S. 421, and cases cited; Sedgwick on Statutory and Constitutional Law, 73; *National Bank* v. *Mathews,* 98 U. S. 626–628; 2 Morawetz on Private Corporations, sec. 695, p. 663, note 3; *Gold Mining Co.* v. *National Bank,* 96 U. S. 641, 642; Ball on National Banks, 201, and cases cited; see Green's

Brice on Ultra Vires, 39, 40, 439, 440, 608; *United States*
v. *Hudson,* 10 Wall. 395; *Railway Co.* v. *McCarthy,* 96
U. S. 258. See also *Jones* v. *Guaranty Co.,* 101 U. S. 628;
Herman on Estoppel, sec. 1223, note 5.) But in this case
there was a specific ratification of all the acts of the direc-
tors of the defendant corporation by its stockholders at a
regular meeting. (Herman on Estoppel, sec. 1175; Mora-
wetz on Private Corporations, secs. 618, 626, 630, 631.)
The subsequent mortgagee cannot set up *ultra vires.*
The Barker note and mortgage were issued by the same
authority which issued the two mortgages in suit. (*Mc-
Allister* v. *Plant,* 54 Miss. 106; Herman on Estoppel, p.
1316, sec. 1179.) One creditor cannot prevent another
from obtaining judgment against a common debtor.
(*Horn* v. *Volcano etc. Co.,* 13 Cal. 62.)

The COURT. — The following opinion, prepared by
Commissioner Vanclief while this cause was pending
in Department, is hereby adopted as the opinion of the
court in Bank; and for the reasons therein given, the
judgment and order appealed from are affirmed: —

VANCLIEF, C. — The Santa Barbara Land, Building,
and Improvement Company is a corporation purporting
to have been organized under title XVI., sections 639–
647, of the Civil Code. The purposes for which it was
organized, as expressed in its articles of incorporation,
are: "The purchase of real estate, the construction of
buildings, and making improvement on real property";
its principal place of business is the city of Santa
Barbara, California, and its capital stock is twelve thou-
sand dollars, divided into four hundred and eighty
shares of twenty-five dollars each.

The action is to foreclose two mortgages on real prop-
erty of the corporation, alleged to have been executed
by the corporation to Gorham & Co. (a copartnership),
and by the latter assigned to the plaintiff.

Martha S. Barker was made a defendant, on the
ground that she held a subsequent mortgage on the same
property.

Both defendants answered, denying all the material allegations of the complaint, except the allegation that the Santa Barbara Land, Building, and Improvement Company was duly incorporated, which they expressly admitted, and alleging affirmative matters to show that the notes and mortgages were not executed by the corporation, and that the attempted execution of them was in excess of the power of the corporation.

The judgment was for the plaintiff, ordering a sale of the mortgaged property, and application of the proceeds to the satisfaction of plaintiff's mortgages in preference to that of the defendant Barker.

Both defendants appeal from the judgment, and from an order denying their motion for a new trial; and the corporation also appeals from an order made after judgment requiring it to file an undertaking in the sum of twelve thousand dollars to stay execution pending the appeal from the judgment.

1. Appellants contend that the notes and mortgages constitute "bonded indebtededness" of the corporation, in the sense of section 11 of article XII. of the constitution of this state; and inasmuch as they were not executed in pursuance of any general law, nor with the consent of a majority of the stockholders at a meeting *called for that purpose on sixty days' notice*, the execution of them was *ultra vires.* They also contend that the indebtedness was fictitious.

The court found, however, from evidence sufficient to justify the finding, that the consideration for the notes consisted of money advanced to and paid for the corporation, and property sold and delivered to it, by Gorham & Co., equal in value to the principal sums for which the notes were made; and that the whole consideration for said notes was applied by the corporation to the construction of fences, buildings, and other fixtures upon the mortgaged property. But only a part of the consideration for each note had been received by the corporation at the date of the note. Each note and mortgage was executed in pursuance of a previous agree-

ment that Gorham & Co. were to advance and pay money and deliver lumber as needed and ordered by the corporation for the improvement of the mortgaged property, and the money was so advanced and paid, and the lumber so delivered. The full consideration for the first note and mortgage (dated July 1, 1886) was received by the corporation before the second note and mortgage were executed; and the full consideration for the second note and mortgage (of November 1, 1886) was received by the corporation before January 4, 1887. No fraud on the part of Gorham & Co. is charged; and all the transactions seem to have been in the ordinary course of business, and within the purview of the purposes for which the corporation was organized. Certainly the indebtedness secured by the notes and mortgages is not fictitious in any sense of the word.

Nor is the indebtedness "bonded indebtedness," in the sense of section 11 of article XII. of the constitution. Without undertaking to define the meaning of the term "bonded indebtedness," as used in the constitution, it may be confidently asserted that it does not embrace a non-negotiable note and mortgage executed by a private corporation to secure its indebtedness for money loaned, money paid, property purchased, or labor performed in the ordinary course of its authorized business, and actually received and used in such business. The notes under consideration are not negotiable, as they are payable to Gorham & Co. alone; and they were executed for the considerations received and used as above expressed. Manifestly, it is not the intention of the constitution to prohibit the increase of all kinds of indebtedness, since the prohibition of a particular kind implies that there may be indebtedness of another kind, and if a corporation may incur and increase any kind of indebtedness without sanction of a general law and consent of a majority of the stockholders, what is the objection to securing all such indebtedness by mortgage? If the constitution does not prohibit a corporation from securing every kind of indebtedness by mortgage, it follows

that the mere fact that a corporation debt is secured by mortgage does not show that it is of the kind prohibited, and that the prohibited kind must be distinguished by some other attribute than that of mortgage security. It will hardly be contended that section 11 of article XII. of the constitution was intended to prohibit all increase of indebtedness not authorized by a general law and consent of a majority of the stockholders; much less that it was intended to prohibit mortgage security for any kind of indebtedness which a corporation may lawfully incur. Conceding that to constitute " bonded indebtedness," in the constitutional sense, it must be secured by mortgage, it does not follow, as contended by counsel, that all indebtedness secured by mortgage is " bonded indebtedness " in that sense.

2. Counsel for appellants further contend that inasmuch as the notes and mortgages were executed for indebtedness beyond the subscribed capital stock of the corporation, their execution was prohibited by section 309 of the Civil Code, which provides that directors of corporations must not " create debts beyond their subscribed capital stock," and that for a violation of this provision " the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen) are in their individual and private capacity jointly and severally liable to the corporation, and to the creditors thereof, in the event of its dissolution, to the full amount of the . . . . debt contracted. There may, however, be a division and distribution of the capital stock of any corporation which remains after the payment of all its debts, upon its dissolution, or the expiration of its term of existence."

Upon a careful reading and construction of this section in connection with section 354, defining the powers of corporations generally, and section 640, relating to the power of the special class of corporations to which the defendant corporation belongs, I think it will appear

that it was not the intention of the legislature, by the enactment of section 309, to deprive corporations of the *power* to create debts beyond their subscribed capital stock, but merely to provide a remedy in favor of the corporation and its creditors against those members of the board of directors by whose improvident or fraudulent exercise of the *powers* of a corporation debts are created disproportionately to the subscribed capital stock, and beyond the ability of the corporation to pay. The section does not provide that the contracts or attempted contracts by which the excess of debts is created shall be void, but, on the contrary, seems to imply the power of the corporation to make them, and that they are valid contracts. If they are void and create no liability of the corporation, it would be absurd as well as unjust to make the individual directors liable to the corporation, especially if the corporation had received a consideration equal in value to the debts created; but as indemnity to the corporation, in case it should be compelled to pay such debts, or to its creditors in case of the insolvency of the corporation, such liability of the directors is reasonable and just. On the construction contended for, the corporation may receive and retain the consideration, and then repudiate the debt. Again, section 309 does not purport to limit the power of the corporation, but only to regulate and check the exercise of that power by the directors, as might have been done by a by-law, though not to the extent of making the directors liable for the excess of debts.

In regard to the effect of statutory prohibitions on the validity of acts thereby forbidden, Mr. Taylor, in his work on Private Corporations, at section 297, deduces from the cases the following rule: "If a statute expressly forbids a corporation to make a certain contract, the contract is void, even though not expressly declared to be so, and is incapable of ratification; and that the contract is void as unlawful may be pleaded by any one to an action founded directly and exclusively on the contract, unless, — 1. The statute expressly states what the conse-

quences of violating it shall be, and those consequences are other than that the contract is void; or 2. The statutory prohibition was evidently imposed for the protection of a certain class of persons who alone may take advantage of it; or 3. To adjudge the contract void and incapable of forming the basis of a right of action would clearly frustrate the evident purpose of the prohibition itself."

The learned author then proceeds to illustrate the rule and its qualifications by the cases. In the first place, it is to be observed that section 309 of the Civil Code does not come within this rule, even without the qualifications, for the reason that it does not expressly forbid the *corporation* from creating debts, etc. In the second place, it does clearly fall within the first qualification, if not within the second and third, since it does state consequences of violating it other than that the contracts creating the debts are void, and does not state that such contracts are void.

From the foregoing considerations, it follows that the creation of the indebtedness to plaintiff's assignor, and securing it by notes and mortgages, was not prohibited by section 309 of the Civil Code.

3. It is also claimed that the creation of the indebtedness was *ultra vires* by force of a by-law of the corporation, which provides that "no indebtedness shall be incurred by the board of directors for any purpose whatever, which in the aggregate shall exceed the amount of capital stock actually subscribed at the time such indebtedness is incurred."

This by-law is the creature of the corporation, acting through and by its stockholders, and generally for their benefit alone; and the same authority that enacted it may repeal it. (Taylor on Private Corporations, sec. 584; *Smith* v. *Nelson*, 18 Vt. 511.) Furthermore, if a course of action contrary to a by-law of a private corporation is acquiesced in by the share-holders, the by-law is thereby waived, and will not affect the rights of persons dealing with the corporation in good faith (Taylor on Private Corporations, sec. 197, and cases there cited), even

though such persons may be share-holders, if they did not have actual notice of the by-law; and where notice is material, "it must be proved against share-holders and agents, as well as against strangers, by direct or presumptive evidence, and cannot be imputed by an arbitrary rule of law." (Morawetz on Private Corporations, sec. 500, and cases there cited.) Acts of the directors in violation of a by-law may be ratified by the share-holders (Morawetz on Private Corporations, secs. 623-625, Taylor on Private Corporations, secs. 187, 213); and, generally, by the same number of share-holders that would be necessary to enact them. (Morawetz on Private Corporations, sec. 626.) Such ratification need not be formally made in a meeting of the stockholders, but may be presumed from the circumstances of the case, such as long acquiescence in acts beneficial to the corporation, with knowledge of all the material facts. In this connection it has been said: " Very slight evidence of acquiescence is sufficient to give validity to a transfer of real or personal property to an agent who was not authorized to receive it; and a ratification may even be presumed without evidence." (Morawetz on Private Corporations, sec. 629.) " Nor can the share-holders of a corporation avoid responsibility for the unauthorized acts of their agent by abstaining from inquiry into the affairs of the company, or by absenting themselves from the company's meetings, and at the same time reap the benefit of their acts in case of success." (Morawetz on Private Corporations, sec. 630. See also Taylor on Private Corporations, secs. 112 et seq.; and Green's Brice on Ultra Vires, 546, note a; Shaver v. Bear River etc. Co., 10 Cal. 396.)

In this case the authority of the directors to create the indebtedness of the corporation to plaintiff's assignor, and to execute the notes and mortgages to secure such indebtedness, contrary to the by-law, was put in issue by the pleadings; and upon this issue the court found for the plaintiff, upon evidence tending to prove a ratification, which, when proved, is equivalent to origi-

nal authority, and justifies a finding of original author-
ity.   This finding is justified by the evidence.   It was
proved that on the tenth day of July, 1886, after the ex-
ecution of the note and mortgage for ten thousand dol-
lars, a sum greatly exceeding the subscribed capital
stock, a meeting of the stockholders, after discussing
the matter of the note and mortgage, passed a resolution
approving " all the acts and proceedings of the present
board of directors since the organization of the com-
pany."   Plaintiff's assignors, Gorham & Co., were en-
gaged in delivering the lumber, and paying for labor
to improve the mortgaged property, for a period of
about six months, between June 1, 1886, and January 4,
1887, and all the lumber had been delivered and money
paid for such labor, constituting the consideration for
the notes and mortgages, before January 4, 1887, under
such circumstances that all the stockholders who gave
ordinary attention to the affairs of the corporation must
have had notice thereof, and of the facts that the entire
consideration of the notes and mortgages had been re-
ceived and used by the corporation.   The whole matter
was talked over at another meeting of the stockholders
after the execution of the second note and mortgage,
without objection to the acts of the directors in creating
the indebtedness, although no formal resolution approv-
ing them was passed at the meeting.   There is no evidence
tending to prove that any stockholder ever objected to any
part of the transactions of the corporation with Gorham
& Co. until long after the full consideration for the notes
and mortgages had been received by the corporation, and
used in improving its real property.   According to the
authorities above cited, this evidence has a substantial
tendency to prove a ratification which justifies the find-
ing of original authority.   The pleadings raise no issue
as to the probative fact of ratification, and if they had, a
finding of the ultimate fact of authority is sufficient.

4. There is nothing in the objection that the second
note and mortgage were not so executed as to bind the
corporation.   There is no question that the president

of the corporation, Charles P. Low, and the secretary, Henry B. Brastow, were authorized to execute the note and mortgage by resolution of the board of directors. The only alleged defect in the execution by them is, that they described themselves as president and secretary of the "Santa Barbara Land and Improvement Company," omitting from the name the word "Building." They attested the execution by the seal of the corporation. The body of the note expresses the promise of the corporation (properly and fully named) to pay, and the mortgage expressly purports to be the mortgage of the "Santa Barbara Land, *Building*, and Improvement Company," but the note was signed as follows: —

"CHAS. P. LOW,

"President of the Santa Barbara Land and Improvement Co.

[Corporate seal.]

"Attest: HENRY B. BRASTOW, Secretary."

And the mortgage was signed: —

"CHAS. P. LOW,

"President of the Land and Improvement Co.

[Corporate seal.]

"Attest: HENRY B. BRASTOW, Secretary."

The secretary is the proper officer to affix the corporate seal, and it devolves upon the party denying the execution of the deed to prove that he had no authority to affix it. The seal itself is *prima facie* evidence that it was affixed by proper authority. (Angell and Ames on Private Corporations, sec. 224; *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543; *Southern California etc. Ass'n* v. *Bustamente*, 52 Cal. 192; *Wharf etc. Co.* v. *Simpson*, 77 Cal. 286; *Evans* v. *Lee*, 11 Nev. 199; *Lodge* v. *Montmollin*, 58 Ga. 547; *Morris* v. *Keil*, 2 Minn. 531; *Sherman Center Town* v. *Swigart*, 43 Kan. 292.)

Section 357 of the Civil Code provides that "the misnomer of a corporation in any written instrument does not invalidate the instrument, if it can be reasonably ascertained from it what corporation is intended."

I think it can be reasonably ascertained from the

note, and also from the mortgage, what corporation was intended. If there was any uncertainty as to whether Low and Brastow were president and secretary of the defendant corporation, or whether they were the persons authorized to execute the instruments, such uncertainty was removed by the pleading and evidence. The foregoing also applies to the certificate of acknowledgment which describes Low and Brastow as known to the notary " to be the president and secretary of the Santa Barbara Land and Improvement Company, the corporation *who executed the foregoing instrument.*" As above stated, it appears upon the face of the mortgage with reasonable certainty that it was executed by the corporation defendant. The mortgage was therefore entitled to record. No person reading the mortgage and certificate of acknowledgment together could be mistaken as to what corporation executed the mortgage.

5. The mortgage of the defendant Martha S. Barker is subsequent and subject to those of the plaintiff, and the court found, upon sufficient evidence to sustain the finding, that at the time she took her mortgage she had both constructive and actual notice of the mortgage to Gorham & Co., and of all the facts in relation thereto. Besides, her mortgage is subject to all objections founded upon section 11, article XII., of the constitution of the state, and the by-law of the corporation urged against the mortgages to Gorham & Co. Therefore the court did not err in adjudging her mortgage to be subsequent and subject to those of the plaintiff.

The foregoing views of the case render all other points made by appellants immaterial.

I think the judgment and order appealed from should be affirmed.

BEATTY, C. J, dissented.

HARRISON, J., dissenting. — I dissent from the views expressed in the second proposition discussed in the foregoing opinion, and from the judgment of affirmance.

Rehearing denied.