[L. A. No. 15716.  In Bank.—July 20, 1936.]

HAMMOND LUMBER COMPANY (a Corporation), Appellant, v. L. L. ADAMS et al., Respondents.

Horton & Horton, Joseph K. Horton and Holbrook, Taylor, Tarr & Horton for Appellant.

Louis Ferrari, Edmund Nelson, Freston & Files, Ralph E. Lewis, O'Melveny, Tuller & Myers and Louis W. Myers for Respondents.

WASTE, C. J.—Plaintiff appeals from a judgment entered for defendants upon the sustaining of a demurrer to the complaint without leave to amend. This case presents a

factual situation similar to that outlined in the opinion in the case of *Fox-Woodsum Lumber Co.* v. *Bank of America, ante,* p. 14 [59 Pac. (2d) 1019]), this day filed, and presents for determination the issue as to the validity of certain so-called participating certificates issued without first procuring a permit from the commissioner of corporations. Upon the authority of our decision in the cited case, and for the reasons therein announced, we are of the view that the procurement of such a permit was not a necessary prerequisite to the valid issuance of said certificates.

By an amended complaint a count was added, not present in the Fox-Woodsum Lumber Company case, *supra,* wherein it was alleged that the participating certificates were void as having been issued in contravention of section 11 of article XII of our state Constitution and of section 359 of the Civil Code, as these laws then read, to the effect that the bonded indebtedness of a corporation shall not be increased without the consent of the persons holding at least two-thirds of the amount in value of the stock. At the time of granting a hearing herein after decision in the District Court of Appeal of the Second Appellate District, Division Two, we were satisfied with that court's disposition of this phase of the litigation and took the cause over solely because of the issue first above mentioned and here decided upon the authority of the Fox-Woodsum Lumber Company case.

As to the "bonded indebtedness" issue, we therefore adopt as a part of our decision herein that portion of the opinion prepared by Mr. Presiding Justice Crail, reading as follows:

"The . . . count alleges that no such consent was obtained and that no meeting of the stockholders was held as required by said section 359. Defendants, on the other hand, contend the certificates do not constitute 'bonded indebtedness' within the purview of the Constitution, and that even if the certificates did represent bonded indebtedness they would not be either void or voidable.

"The law is meager in California as to what constitutes 'bonded indebtedness' . . . plaintiff takes it for granted, largely, that the certificates before us constitute bonded indebtedness and contents itself with the following assertion in that behalf: 'The rules of law, as to what constitutes a bonded indebtedness of a corporation, are so generally known and settled that we feel justified in referring to,

as authority in this respect, 14a C. J.—Corporations, page 610, section 2563.' Turning to this authority, which as we have said is the only one cited by plaintiff in support of this contention, we find it reads as follows: 'In the ordinary meaning of the term, a corporate bond is a written promise by a corporation under seal to pay a fixed sum of money at some future time named, with stated interest payable at some fixed time or intervals, given in return for money, or its equivalent, received by the corporation, sometimes secured, and sometimes not.' It is obvious that this is a very general definition, so broad in its terms as to include ordinary promissory notes and a wide variety of other contracts which plainly and unmistakably are not corporate bonds. It must be remembered that the question which now confronts us is not whether the certificates constitute a 'security' under the Corporate Securities Act, but whether they constitute a 'bonded indebtedness' within the meaning of the Constitution and code provisions.

"In the case of *Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 300 [28 Pac. 1049, 1050], the contention was made that certain notes issued by a corporation and secured by mortgages in consideration of labor and material furnished to the corporation constituted a bonded indebtedness within the meaning of said constitutional provision. The court said: 'If the Constitution does not prohibit a corporation from securing every kind of indebtedness by mortgage, it follows that the mere fact that a corporation debt is secured by mortgage does not show that it is of the kind prohibited, and that the prohibited kind must be distinguished by some other attribute than that of mortgaged security. It will hardly be contended that section 11 of article XII of the Constitution was intended to prohibit all increase of indebtedness not authorized by a general law and consent of a majority of the stockholders; much less that it was intended to prohibit mortgage security for any kind of indebtedness which a corporation may lawfully incur. Conceding that to constitute "bonded indebtedness", in the constitutional sense, it must be secured by mortgage, it does not follow, as contended by counsel, that all indebtedness secured by mortgage is "bonded indebtedness" in that sense.'

"In the case of *Bank of Newman* v. *Monterey County etc. Co.*, 48 Cal. App. 263 [191 Pac. 970], the defendant corpora-

tion had placed a written guaranty upon the bonds of another corporation and the contention was made that this guaranty constituted a bonded indebtedness. The court said: 'We are unable to agree with the position taken by the appellant in this regard. The guaranty in question appears upon its face to have been issued for value received, and there is nothing in this record to indicate that it was not issued in good faith and in the regular course of the business of the corporation issuing the same. It does not *purport* to have any relation to any past bonded indebtedness of the appellant, or to have been issued *in the form or with the intent* of creating or increasing any bonded indebtedness of the corporation; but, on the other hand, it appears as to both its form and substance to belong to that class of written instruments which include promissory notes, checks, bills of exchange, and like obligations of corporations or of individuals issued in the ordinary course of business. The term "bonded indebtedness" has never been held to apply to or include this class of obligations, but as used in the Constitution and statutes has had reference to those more *formal transactions* of both municipal and private corporations which require such prerequisites as elections, or the express approval of stockholders, in order to their creation, and which when thus permitted take the *express form of bonds* . . .' (Italics ours.)

"While it would be difficult and perhaps unwise to attempt to accurately define the term 'bonded indebtedness', it is apparent that some regard must be had to the questions: Was the paper which is in controversy formally issued as a bond?; and, Was it of such nature as to be recognized and accepted as such by the business and financial world?

"The so-called beneficial certificates which we have under consideration were issued in the first instance only to contractors, subcontractors and materialmen who had furnished labor and material to Arcady in its regular course of business and had agreed with Arcady to accept a portion of their compensation in the form of an undivided interest in a $600,000 note and trust deed. When such contractor or materialman performed his services or furnished the material agreed upon, he became entitled to an undivided interest in that promissory note and trust deed. His certificate when issued merely provided him a convenient evidence of his ownership of such an undivided interest. This case was

submitted in part upon the briefs which were filed in the Fox-Woodsum Lumber Company case [(Cal. App.) 51 Pac. (2d) 1149] and this court has had the benefit of all the briefs in this group of cases. The so-called beneficial certificates were never referred to in any of them, so far as we recall, as constituting a bonded indebtedness. They were not designated as such even by the plaintiff herein until four years after the commencement of the action. It is admitted in the briefs that defendant throughout the entire transaction acted in the utmost good faith and without profit to itself other than the usual fee for acting as trustee or registrar, and to hold at this late date that these participation certificates constitute the creation of a bonded indebtedness would be to impose in effect a penalty or forfeiture upon the defendant. Our conclusion is that the certificates do not constitute the creation of a bonded indebtedness within the meaning of the constitutional provision. Holding as we do, it is unnecessary for us to consider the other contentions of the parties.''

■ However, even if the certificates were bonds, the appellant is not the proper party to question their validity on the ground here urged. (*McKee* v. *Title Ins. Co.*, 159 Cal. 206, 223 [113 Pac. 140].)

Judgment affirmed.

Curtis, J., Shenk, J., Seawell, J., and Thompson, J., concurred.