[Civ. No. 18461.   First Dist., Div. Two.   Dec. 7, 1959.]

LOUIS HORNER, Appellant, v. MARINE ENGINEERS'
BENEFICIAL ASSOCIATION, NUMBER 97, OF SAN
FRANCISCO (a Corporation), etc., et al., Respondents.

Julien R. Bauer for Appellant.

Sefton & Gartland and Seibert L. Sefton for Respondents.

DRAPER, J.—Plaintiff is a member of Marine Engineers' Beneficial Association Number 97, Inc., an incorporated labor union. After exhausting his remedies within the union, he brought this action on behalf of the corporation and its members against some corporate officers, alleging that they had been paid salaries exceeding the amounts permitted by the by-laws, and seeking restoration to the corporation of such

excess payments. After trial to the court without a jury, judgment was entered in favor of defendants. Plaintiff appeals.

As amended in 1946, article XXIII of the corporation's by-laws provided that salary of the secretary-treasurer "shall not exceed" $140 per week, and that the salary of each business agent and the dispatcher "shall not exceed" $120 per week. The president's allowance for expenses was not to exceed $12.50 per meeting. Upon adoption of the 1946 amendment, the salaries of the secretary-treasurer, the business agents and the dispatcher were increased to the maxima stated therein. From that time until the filing of this action in 1956 six salary increases were granted by resolutions of the membership. When this suit was filed, the secretary-treasurer was receiving $240.87 per week, the business agents and the dispatcher were being paid $207.09 each per week, and the president was receiving $14.38 per meeting. There is evidence that these several increases followed and were roughly proportionate to increases in the pay scale of union members.

The trial court, upon the theory that the by-law limitation on salaries was ambiguous, admitted parol evidence and concluded that the by-law did not prohibit salaries in excess of the amounts stated therein. We cannot agree. The claimed ambiguity is found in another section of the same by-laws providing that "The salaries of the officers . . . shall be filed (fixed) by the Association at a regular meeting by a majority vote, and shall not be fixed more than once in twelve months, provided however, that at such time as the general wage level of operating Marine Engineers is altered for any reason, the salaries of the Officers of this Association shall be subject to review by the membership." This section is immediately followed by the above-quoted provisions that the several salaries "shall not exceed" the amounts specified. We cannot agree that the earlier provision imports any ambiguity in the specification of maximum salaries. It in no way suggests that those limitations are to be raised as the union wage level increases. Rather, it deals only with the time at which salary increases may be granted. It follows that the trial court erred in admitting parol evidence and in concluding that the fixed limits could be exceeded as the wage scales of operating marine engineers increased.

We also conclude that the trial court erred in determining that plaintiff has no standing to bring this derivative action. This determination was based on textbook language that a plaintiff in such case, "cannot recover unless he shows

an injury to himself, in addition to an injury to the corporation" (13 Fletcher on Corporations [rev. vol.] 309). A full reading of the cited section (§ 5948), particularly in the light of other language (see § 5816), indicates that the author means only to state that a stockholder who is "in nowise affected, directly or indirectly," cannot sue. But appellant has shown that he would be so affected. Even if an individual member of this union would have no interest in distribution of the corporation's assets on dissolution, as respondents claim, he would nonetheless suffer an indirect adverse effect if the financial stability of the union were endangered by the making of illegal payments. Sick benefits and death or funeral benefits are provided for by the by-laws and seem clearly to give each member of the incorporated union an interest in its continued financial soundness. Thus even if the rule relied upon by respondents were followed in California, this action would not be barred. ■ However, the California rule does not require that a member of a nonprofit corporation show individual damage to himself in order to bring an action in behalf of the corporation. (*Malone* v. *Superior Court*, 40 Cal.2d 546 [254 P.2d 517].) The decision principally relied upon by respondents (*Briggs* v. *Scripps*, 13 Cal.App.2d 43 [56 P.2d 277]) states only the obvious rule that a stockholder may not maintain an action on behalf of a corporation unless there is a showing of some injury to the corporation.

■ Although the trial court erred in resolving both of these issues in favor of defendants-respondents, there is no occasion to reverse the judgment if any one of the several affirmative defenses asserted was properly determined adversely to plaintiff. We have concluded that the trial court properly found that the union membership had ratified and confirmed the questioned payments.

On June 16, 1955, the union amended its by-laws to eliminate the provisions for limitation of salaries. On December 6, 1956, some six months after filing of this action, the by-laws were again amended. The amending resolution recited in full the 1946-1955 language of article XXIII, affirmed the elimination of salary limits, and provided further:

"That all actions taken by the membership, officers and trustees of the . . . (union) adjusting or increasing the salaries or compensation of the . . . (officers) in excess of any limitation that might have heretofore existed in this section, be, and the same are, hereby approved, ratified and confirmed as fully as if, and to the same extent as if, said officers and trustees and

members were originally and initially fully authorized and empowered to allow, grant or authorize the same, fully, retroactive to the dates when allowed, granted or authorized.''

This amendment was adopted in full accordance with all requirements of the by-laws. It was introduced at a regular meeting, posted in a public place in union headquarters for 60 days, read at meetings intervening between date of introduction and final passage, and adopted by vote of 186 to 2, far more than the required three-fourths of the members present. The resolution proposing the amendment was signed by 460 members. They constituted some 30 per cent of the total membership, far more than the 7 per cent required.

Further, each payment of salary had been reported to and approved at a regular meeting of the membership before payment. Two meetings of the membership were held each month. No payment of union funds was made until reviewed by an auditing committee, read to the members present and approved by motion adopted at such a meeting. This practice was followed as to all salaries for the full nine-year period involved in this action, and no objection to payment of any such salary item was ever made. This acquiescence, as well as the formal ratification quoted above, was pleaded and proven by respondents.

█ Stockholders or members of a corporation may waive the protection of by-laws which operate in their favor, and may effect such waiver by express ratification of action in conflict with the by-laws (8 Fletcher on Corporations 772.) Such ratification may be made by the same number of shareholders necessary to enact the by-law. (*Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 300, 312 [28 P. 1049].)

There is no evidence that the salaries paid were unreasonable. In fact, appellant specifically disclaimed any such contention. Thus there is no fraud or unfair dealing as to the corporation. (*Russell* v. *Henry C. Patterson Co.*, 232 Pa. 113 [81 A. 136, 36 L.R.A. N.S. 199].) In view of the reports of salaries made regularly to the membership meetings, it cannot be claimed that the officers derived any secret profits. (*Bay City Lumber Co.* v. *Anderson*, 8 Wn.2d 191 [111 P.2d 771].)

█ The long-continued acquiescence of the members in such payments could itself be regarded as a waiver of the limitation or as ratification of the payments. (*Underhill* v. *Santa Barbara etc. Co.*, supra, 93 Cal. 300, 311; *Huxtable* v. *Berg*, 98 Wash. 616 [168 P. 187].) Of course, in view of the express ratification here, it is unnecessary to rely upon such acquiescence.

■ Appellant argues that the vote of two-thirds or three-fourths of the total membership is required to ratify. But the evidence shows that a large portion of the membership is at sea at any meeting date. It was apparently to permit the corporation to act at all that the by-laws require, for their amendment, only the vote of three-fourths of the members present at a regular meeting. There is no showing that the 1946 by-law upon which plaintiff himself relies was adopted by even as large a proportion of the total membership as was the resolution of ratification.

Aware of the need for vigilance in the protection of the rights of a minority or an individual member, we have reviewed the record in detail. We are satisfied that it shows no evidence of concealment or overreaching. On the contrary, it demonstrates a healthy and continued regard for democratic procedure. ■■ There is no showing that the salaries complained of were in any way unfair or unreasonable. Thus we have no hesitancy in concluding that formal ratification of these salaries by an overwhelming vote at a regular meeting of the informed membership is a complete defense to this action.

■ Plaintiff asserts error in the order made after close of the trial authorizing defendants to amend their answer to conform to proof. The complaint alleged that defendant officers dominated and controlled the union. This was not denied by the answer. After submission of the case, leave to amend to conform to proof was granted. We find no error in this ruling as it relates to the determinative issue of ratification. The defense of ratification was specially pleaded. It constitutes an affirmative defense. In an effort to meet this defense, plaintiff did introduce evidence upon the question whether the union meeting which voted ratification was dominated by the officers. The contrary evidence was strong, and the issue was resolved against plaintiff. Thus this issue was in fact contested at trial. Under these circumstances, plaintiff was not prejudiced by the amendment to conform to proof. The court correctly followed the rule requiring liberality in allowing such amendments (39 Cal.Jur.2d 379, Pleading, § 258.)

Finally, plaintiff asserts error in denial of his motion to tax costs. The item in dispute is the cost of the deposition of one Connolly, taken some five months after Connolly had withdrawn as a coplaintiff here. Plaintiff relies on *Whitaker* v. *Moran* (1914), 23 Cal.App. 758 [139 P. 901], for the rule that

when the affidavit supporting a motion to tax costs alleges that a claimed item was unnecessary, the item cannot be allowed unless the allegation of lack of necessity is met by affidavit or by the record before the court. ▮ The 1941 amendment to Code of Civil Procedure, section 1032a, provides that the reasonable cost of a deposition shall be allowed "unless it shall appear . . . that the taking of such deposition was unnecessary." The amendment appears to place the burden of proof upon the party claiming lack of necessity. ▮ In any event, plaintiff's affidavit is insufficent to bring him within the rule stated in Whitaker. His affidavit asserts only that the papers which initiated the taking of the deposition stated that Connolly was a "necessary witness" without detailing the necessity, and that plaintiff raised this point when the deposition was taken. Nowhere does the affidavit assert that the deposition was in fact unnecessary to defendants' case. The affidavit supporting the costs bill, on the other hand, asserts that each item was "necessarily incurred." There was no error in allowing this item of costs.

Judgment affirmed.

Dooling, Acting P. J., and Stone, J. pro tem.,* concurred.

A petition for a rehearing was denied January 6, 1960, and appellant's petition for a hearing by the Supreme Court was denied February 3, 1960.

*Assigned by Chairman of Judicial Council.