[No. 14162. Department One. October 20, 1917.]

W. I. HUXTABLE *et al., Appellants,* v. CARL BERG, *Respondent,* W. P. MURPHY, *as Sheriff, Defendant,* YAKIMA VALLEY CANAL COMPANY *et al., Appellants.*[1]

PARTIES — BRINGING IN NEW PARTIES — STOCKHOLDER'S ACTION — CROSS-COMPLAINT. Under Rem. Code, § 196, providing that the court may bring in other parties when necessary to a complete determination of the controversy, and Id., § 406, authorizing judgment for or against one or more of several plaintiffs or defendants, in a stockholder's action to restrain the sale on execution of the property of an irrigation company, it is proper, on the cross-complaint of the execution creditor seeking to enforce the levy of an assessment against the property, to bring in the trustees of the company and a trustee under a deed or mortgage to secure bonds; as the cross-complaint is sufficiently germane to the subject-matter of the original action to be properly tried with it.

WATERS AND WATER COURSES — IRRIGATION COMPANY — CHARTER PROVISIONS FOR DEBTS. An action for damages to crops through the failure of an irrigation company to supply water to which the plaintiff was entitled, is founded upon contract, and judgment therefor is a "debt" within the meaning of a charter requiring "any debts" of the corporation to be paid from water rentals.

SAME — CHARTER PROVISION FOR DEBTS — ASSESSMENTS. Where each share of stock in a "mutual ditch company" represented a water right for one acre of land, and was fully paid up, and the charter provided that any debts should be paid from water rentals, the corporation may be required to levy and collect an assessment from stockholders to pay a judgment for a debt of the corporation.

CORPORATIONS — BY-LAWS — ABROGATION. A by-law of an irrigation company providing that the annual water rental shall not exceed one dollar per share is abrogated by nonuser, where the trustees repeatedly fixed and collected a rental to the extent of five or six dollars per share for a sufficient length of time to bring it home to the stockholders.

SAME — STOCK — ASSESSMENT. Where the right to levy an assessment upon the stock of an irrigation company as water rentals was authorized by the articles of incorporation, the assessments may be collected although the stock was fully paid.

SAME — ACTION OF STOCKHOLDERS — JUDGMENT — RIGHTS OF MORTGAGEE. Where a mortgage trustee was a large stockholder in an ir-

rigation company, and had been at all times in favor of paying a
judgment recovered against the company, and took no part in a
conspiracy to defeat payment, he should not, on dismissing a stock-
holder's action to restrain enforcement of the judgment, be enjoined
from foreclosing his mortgage pending assessment of the stockhold-
ers to pay the judgment, he having abandoned his claim for fore-
closure at the trial, and the law affording protection to all creditors
in case of foreclosure.

Appeals from a judgment of the superior court for Yakima
county, Mills, J., entered October 28, 1916, in favor of the
defendant cross-complainant, in an action for equitable relief,
tried to the court. Reversed as to defendant Congdon; af-
firmed in all other respects.

*A. L. Agatin* and *Rigg & Venables*, for appellants Hux-
table *et al.*

*Williamson & Luhman*, for appellant Congdon.

*Thomas H. Wilson* and *Bogle, Graves, Merritt & Bogle*,
for respondent.

MAIN, J.—The purpose of this action was to restrain the
sale under execution of an irrigation canal, the right of way
therefor, its connected structures, and the appurtenant water
rights, the legal title to all of which was in the Yakima Valley
Canal Company, a corporation organized under the general
incorporation laws of this state. The plaintiffs were certain
stockholders in the corporation, and brought the action on
behalf of themselves and all other stockholders, claiming that,
by virtue of the articles of incorporation and the certificates
of stock, the stockholders were, in fact, the owners of the
physical property of the corporation upon which the execu-
tion had been levied. The defendants named in the complaint
were a judgment creditor—who will hereafter be referred to
as Berg—and the sheriff of Yakima county. To the com-
plaint, Berg responded by an answer and cross-complaint.
In the cross-complaint, the Yakima Valley Canal Company,
the corporation, the trustees thereof, and one Chester A.
Congdon, who was trustee under a deed or mortgage made by

the canal company for the purpose of securing its bonds, were made parties defendant. In this cross-complaint, Berg sought to compel the trustees of the corporation to levy an assessment to pay his judgment, and restrain Congdon from foreclosing his trust deed, or mortgage, claiming that the trustee had entered into a conspiracy with the other stockholders to foreclose the mortgage and thus defeat the judgment. The adverse parties named in the cross-complaint, together with the plaintiffs in the original action, moved to strike that complaint on the theory that it was not germane to the original action. This motion was denied, and, after the issues were framed, both upon the original complaint and upon the cross-complaint, the cause was tried to the court without a jury, and resulted in a judgment restraining the sale of the property upon the execution, and directing the trustees of the corporation to levy and collect an assessment to pay the Berg judgment, and also the balance of the interest due upon the bonds which were secured by the mortgage. It was further provided that, in the event that the assessment was not promptly levied and collected, the court would appoint an officer for that purpose. The foreclosure of the mortgage by the trustee named therein was restrained.

The briefs recite that an appeal was taken by the corporation, its stockholders and officers, and by the mortgage trustee, and also by Berg, from that part of the judgment which restrained the sale of the property under execution. The record, however, contains no notice of appeal by Berg.

The first question is whether the trial court erred in denying the motion to strike the cross-complaint. The briefs upon this question contain elaborate arguments and numerous citations of authorities. It seems, however, that it is unnecessary to review the authorities from other jurisdictions, because the statutes of many states from which the cases are cited differ materially from the statutes of this state, and the courts of some of the states have adopted a less liberal rule with reference to the bringing in of additional parties and

the litigation of issues upon a cross-complaint than has this court. Section 196, Rem. Code, provides that, when a complete determination of a controversy cannot be had without the presence of other parties, "the court shall cause them to be brought in." Section 406, Rem. Code, provides that judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; "and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side, as between themselves." In *Maher & Co. v. Farnandis*, 70 Wash. 250, 126 Pac. 542, the plaintiff, a second subcontractor, brought an action to foreclose a lien. The defendants in the action were the original contractor and the first subcontractor. The first subcontractor answered the complaint and filed a cross-complaint against the principal contractor, claiming that the latter was indebted to him for a balance due. The principal contractor moved to strike the cross-complaint because it was improper in such an action, and because he was entitled to try the issue presented thereby to a jury. This motion was denied, and the trial to the court resulted, on the cross-complaint, in a judgment in favor of Carter, the first subcontractor, and against the principal contractor. Upon appeal two principal contentions were made against the Carter judgment: (a) That the court erred in not striking the cross-complaint; and (b) that, if the issue raised thereby was triable in that action, it was an issue of law and he was entitled to a jury trial. Upon the question, it was there said:

"We think the better view is that, where the original bill presents questions of equitable cognizance, the defendant may have legal relief against the plaintiff, and that the several defendants may cross-plead with each other and have all rights between them germane to the subject of the bill determined. [Citing authorities.] This rule avoids a multiplicity of suits, is in aid of orderly procedure, and is in harmony with the statute. The code, Rem. & Bal., § 406, provides that, when 'the justice of the case requires it,' the

court may determine 'the ultimate rights of the parties on each side as between themselves.' "

In that case, it will be observed that the issue raised by the cross-complaint was one of law, while the original action was an equitable one. It was, nevertheless, held that the issue of law between the defendants could be presented by the cross-complaint and tried in the original action. In the case now before us, the issue presented by the original complaint was equitable. The relief asked for by the cross-complaint was equitable, and the relief asked by the mortgage trustee was equitable. By the original complaint, it was sought to restrain the property from being sold under an execution on the Berg judgment. Berg, by his cross-complaint, sought to collect the judgment in a manner other than by the levy of an execution. The purpose, on one side, was to prevent the collection of the judgment, and on the other, to collect it. We think that the issue raised by the cross-complaint was sufficiently germane to the subject-matter of the original action to be properly triable therein. As stated, all the parties were asking for equitable relief. They were all before the court and their respective contentions fully heard. No prejudice has resulted by reason of the trial of issues of the cross-complaint in this action. If the motion to strike the cross-complaint should be sustained, it would only result in sending the parties out of court through one door in order that they might return through another. It is the policy of the law to encourage the litigation in one action, so far as practicable, of all controversies relating to the same subject-matter, and thus avoid multiplicity of litigation. Upon this question we conclude that it was not error on the part of the trial court to refuse to strike the cross-complaint.

The next question is whether the court erred in directing the trustees to make and collect an assessment from the stockholders for the purpose of paying the Berg judgment. The facts germane to this question may be stated as follows: The

Yakima Valley Canal Company was incorporated during the year 1894. The capital stock of the company is $4,200, divided into 4,200 shares of the par value of $1 per share. The articles of incorporation provide that no dividends shall be paid upon the stock, but that each share of stock shall constitute a water right for one acre of land. The corporation is what may be referred to as the "Mutual Ditch Company," but organized, as above stated, under the general incorporation laws of the state. At the time this corporation was organized, there was no special statute of this state relative to the organization of such companies. After the corporation was organized, it acquired water rights, either by appropriation or purchase, acquired the right of way for a ditch or canal, and constructed such ditch or canal from a point on the Naches river, a distance of approximately twenty-one miles, to the lands of the stockholders, who were to receive the water therefrom. The stock was fully paid, the corporation issued bonds in excess of $100,000, and the mortgage above referred to was given to secure these.

Sometime prior to the year 1915, William Berg secured a judgment against the Yakima Valley Canal Company for damage to his crops which had been caused by the failure of that company to supply him the amount of water which he was entitled to. This judgment, in *Berg v. Yakima Valley Canal Co.*, 83 Wash. 451, 145 Pac. 619, L. R. A. 1915D 292, was affirmed. It may not be inappropriate, in passing, to refer to the fact that, subsequent to that decision, the supreme court of California, in the cases of *Beatty v. Clark Colony Water Co.*, 28 Cal. App. 745, 153 Pac. 989, has held that a corporation, under a similar organization, is liable for damages to crops for the failure of the ditch company to furnish the water which the stockholder is entitled to.

The facts leading up to the judgment in the Berg case are fully set forth in the opinion upon the former appeal, and need not be here repeated. The articles of incorporation of the Yakima Valley Canal Company provided for an annual

water rental to meet the cost of maintenance and operation of the canal; for the accumulation of a surplus fund for the purpose of repairing or renewing the canal; and for paying any debts of the corporation. It is therein stated:

"This corporation shall have power to fix, from time to time, its annual water rentals which shall not exceed the cost of the maintenance and operation of said canal, provided that nothing herein contained shall prevent the trustees of this corporation from accumulating from its water rentals such surplus fund as they may deem best for the purpose of repairing or renewing said canal, from time to time, and for paying any debts of said corporation. But no funds arising from said water rentals shall ever be applicable to the payment of dividends on the stock of said corporation."

The certificates of stock provided that the corporation had a lien thereon for all water rentals that might become due until such rentals should be paid. The articles of incorporation also provided for this lien upon the stock and the foreclosure thereof. Under the provision of the charter quoted, the annual rental is to be collected from the stockholders, and it is from this source that the canal is to be operated, maintained, repaired, or renewed. From the water rental, "any debts" of the corporation are to be paid. Under the general question last-above cited, the particular question here is whether the Berg judgment is a debt which the corporation may be required to pay. It is contended that the Berg action was one sounding in tort, and therefore it is not such a debt as the corporation may be required to pay. Upon the former appeal, it was contended by the attorneys for the corporation—who now represent the stockholders, the corporation, and its trustees—that the action was one based upon a contract. This view was adopted by the court, and the opinion in that case is written upon that theory, and this view we are disposed to adhere to. But, however this may be, the language of the article is "any debt," and this is sufficiently broad to include the Berg judgment, even if it be

assumed that the action in that case sounded in tort. The rule as stated in 10 Cyc. 684, is that:

"A judgment against a corporation is certainly a debt of the corporation without reference to the question whether it was founded upon a tort or upon a contract. Hence where it is sought merely to subject what remains unpaid by the shareholder in respect of his shares, it is clear that any demand against the corporation which has been reduced to a judgment will be available as a basis of such a proceeding without reference to the nature of the original claim. If it is merged in the judgment it becomes a 'debt of record,' in the language of the common law; and upon this point there will be no difference of judicial opinion. . . ."

To review the authorities cited upon this question in the briefs would unduly extend this opinion. As a type, however, the case of *Bohn v. Brown,* 33 Mich. 257, may be referred to. In that case, the court was construing a statute of the state of Michigan which made the stockholders, in certain instances, liable for debts contracted by the corporation, and it was there held that a judgment in an action for personal injuries was not a *debt contracted* within the contemplation of the statute. In the articles of incorporation of the Yakima Valley Canal Company there is no such limitation, but the broad language, "any debts," is used. There are many cases, under statutes which give a right of action against the stockholders for a certain class of debts, where it is held that such a statute does not include debts not within a specified class, but these authorities can have no application to the question here presented.

Reliance is also placed upon a by-law of the corporation which provides that the annual water rental shall not exceed $1 per share unless the stockholders shall first authorize, by majority vote, a larger water rental. As shown by the record, this by-law has been principally honored by its breach. The trustees of the corporation have repeatedly, from year to year, fixed and collected a water rental to the extent of five or six dollars per share, without being authorized so to do by

a majority vote of the stockholders. Nonusage of a by-law by corporate officers, continued for a sufficient length of time to bring it home to the stockholders, will work its abrogation. Thompson, Corporations (2d ed.), vol. 1, § 1021, page 1234; *Blair v. Metropolitan Savings Bank*, 27 Wash. 192, 67 Pac. 609; 3 Clark and Marshall, Private Corporations, p. 1952.

Referring to the by-law, the president of the company, who had been an officer or director thereof for approximately eighteen years, testified that it was not observed "after we had commenced to improve the ditch to such great extent. That by-law was made in the early history of the canal, and in the later history it was not carried out." By levying assessments as water rentals, the company had, for a number of years, raised annually approximately $25,000, which sum was necessary to pay the interest on the bonds, operate the canal, and make improvements. Even though the stock has been fully paid for, the articles of incorporation provide for its assessment by way of water rentals. Where the articles of incorporation, or the statute, authorize an assessment upon such stock, it may be levied and collected, notwithstanding the fact that it is fully paid. *Nelson v. Keith-O'Brien Co.*, 32 Utah 396, 91 Pac. 30; *Hall v. Eagle Rock & Willow Creek Water Co.*, 5 Idaho 551, 51 Pac. 110. In the case now before us, the right to levy an assessment upon the stock as water rentals was authorized by the articles of incorporation, and a method by which such assessments could be collected was there provided for.

Some complaint is made because the trial court did not find that the property levied on was "in fact and in truth the property of the stockholders of said canal company," and was not the property of the corporation, even though the legal title stood in it. The decision of this question does not seem to us necessary, and we express no opinion thereon.

In response to the prayer of the complaint, the trial court granted an injunction restraining the sale of the property on

execution.   Berg, in his cross-complaint, asked that the trustees be directed to levy an assessment upon the stock.   This request was granted and an adequate means provided for the purpose of making it effective, and by failing to perfect an appeal, and from the course of his argument in the brief, he apparently acquiesces in the judgment.

Upon the appeal of the mortgage trustee, the question is whether the court properly restrained the foreclosure of the mortgage.   The restraint of the foreclosure was sought by the cross-complaint upon the theory that the mortgage trustee and the other stockholders had entered into a conspiracy to defeat the collection of the Berg judgment.   There is abundant evidence in the record to support the charge of conspiracy as to stockholders, other than the mortgage trustee, though, as one of the officers of the corporation testified, they preferred to call it devising ways and means of defeating the judgment, rather than a conspiracy.   The evidence shows that the mortgage trustee was a large stockholder, and that he at all times was in favor of paying the judgment.   While he asked, in his pleading, for a foreclosure, his counsel, upon the trial, stated that all that was desired was the protection of the security, and, if that could be accomplished in any other way than by foreclosure of the mortgage, the mortgage trustee would accept that course.   The mortgage trustee concludes his brief by asking that the injunction against him be dissolved and that he be dismissed from the action. This, apparently, is an abandonment of the claim to foreclose.   If a subsequent foreclosure should be instituted before the payment of the Berg judgment, the law affords a way by which the rights of all creditors may be protected.   The facts in this record, as already indicated, will not sustain a finding that the mortgage trustee was a party to any conspiracy to defeat the Berg judgment.   The judgment as to him will therefore be reversed, and the trial court directed to enter a judgment dismissing him out of the action.   The judgment, in all other respects, will be affirmed.   The costs

in this court will be charged to the appellants other than the mortgage trustee. The costs of the mortgage trustee will be charged to Berg.

ELLIS, C. J., MORRIS, and PARKER, JJ., concur.