[No. 19233. Department One. October 2, 1925.]

## C. W. MELVILLE, *as Receiver etc., Respondent,* v. T. M. RHODES, *Appellant.*[1]

CORPORATIONS (35, 45, 92)—STOCK SUBSCRIPTIONS—FULLY PAID-UP ASSESSMENTS—RIGHTS OF CREDITORS — TRUST FUND — LIABILITY TO CREDITORS. Where the capital stock of a corporation when fully paid was declared to be non-assessable, except that the trustees could assess paid up shares of a certain series a maximum of $60 a year, a provision in the articles that investments from subscriptions and assessments shall be held in trust for the stockholders of that series, must be construed simply to require the subscriptions and assessments in any particular series to be kept separate and distinct from other series; in view of the trust fund doctrine of this state, and that any other construction would involve the company in the business of a trust company without complying with the law regulating the business of trust companies.

SAME (35, 45, 92). Fully paid-up stock in a corporation may be assessed, when authorized by the articles, and the creditors may look to the same as assets of the company.

Appeal from a judgment of the superior court for King county, Hall, J., entered September 30, 1924, upon findings in favor of the plaintiff, in an action by

[1]Reported in 239 Pac. 560.

a receiver of a corporation to recover an unpaid stock subscription, tried to the court. Affirmed.

*Winter S. Martin* and *Ray M. Wardall,* for appellant.

*Spencer Gray,* for respondent.

MAIN, J.—This action was brought by the receiver of an insolvent corporation to recover on what may be called the balance due on a stock subscription, for it was in effect that. The trial was to the court without a jury, and resulted in findings of fact, conclusions of law and a judgment in favor of the plaintiff. From this judgment, the defendant appeals.

On or about the 24th day of November, 1916, a corporation was formed with the name of the Thrift Club. The articles provided, among other things:

"That the capital stock of said corporation shall be One Hundred Dollars ($100) divided into One Hundred (100) shares of One Dollar ($1.00) each. That no individual, corporation or association of individuals shall acquire, or hold directly or indirectly, more than one share of said capital stock at any one time, except that original subscriptions for capital stock shall be received for more than one share and that said corporation may acquire by purchase shares of its said capital stock with funds from its surplus, but neither directly nor indirectly with funds from its said capital stock, and may hold and dispose of said shares.

"That said capital stock when fully paid shall be non-assessable, except that said trustees are empowered each year to assess each share of said capital stock when fully paid to the extent of Sixty Dollars ($60.00) and no more, with a maximum assessment in any calendar month of Five Dollars ($5.00), under such limitations and in such manner as the by-laws of said corporation shall provide."

In pursuance of the articles, by-laws were made and the corporation entered into the business of buying,

selling, managing and speculating in real property. The chief object of the corporation, as stated in the appellant's brief, "was to permit group speculation with an aggregate fund of substantial size made up of voluntary small contributions of a large number of people." After doing business for approximately three years, amended articles of incorporation were filed which contained the same provisions as those above quoted, and, among others, was added the following:

"That investments from the subscriptions of the capital stock of any of said series and of the assessments of stock in any of said series shall be held by the corporation in trust for the stockholders of such series, as also shall be held any other funds or accumulations of such series or the assets thereof."

The amended articles provide that the stock should be divided into different series, the stockholders under the original articles being designated as series A, and two other series were created, those of B and C. The capital stock under the amended articles was increased to $500, divided into five hundred shares of the par value of $1 each. The stock was sold, the corporation continued in business, assessments were made and paid, and assessments were made which were not paid. In time the corporation became insolvent and a receiver was appointed. An application, upon notice to the stockholders, was made to the court to authorize an action to recover upon the assessments made and unpaid, which application was granted. Thereafter the present action was brought to recover an assessment which had been made and not paid against one of the stockholders.

The question is whether the funds derived from the assessments are an asset of the corporation or whether they are trust funds for the benefit of those making

the payments. The original as well as the amended articles expressly provided for the assessments. It is said therein that the capital stock when fully paid shall be non-assessable, "except that said trustees of said corporation are empowered each year to assess each share of said capital stock in the series designated and known as Series A, when fully paid, to the extent of Sixty Dollars ($60), and no more, with a maximum assessment in a calendar month of Five and no/100 ($5) Dollars. The power is hereby given to the board of trustees to establish the assessment on the shares of the capital stock of any particular series, all under such limitations and in such manner as the by-laws of said corporation shall provide." If that provision of the articles which provides that the investment in the capital stock of any series and the assessments in any of the series "shall be held by the corporation in trust for the stockholders of such series" is construed as making the fund derived from the stock and the assessments a trust fund for the benefit of those making the payments and not as an asset of the corporation, then the corporation was organized and did business as a trust company without complying with the provisions of ch. 80 of the Laws of 1917, p. 271, which is:

"An Act relating to banking and trust business; the organization, regulation, management and dissolution of banks and trust companies, providing penalties and repealing certain acts and declaring an emergency."

Under this act, if the fund was not an asset of the corporation but a trust fund for the individual members, the corporation was engaged in a trust business in violation of the provision of the act and would be subject to the attendant consequences. If the provision of the articles be subject to two constructions, it should be given that construction which would make the business of the corporation legal and not subject

the corporation and its organizers to a penalty, and not that construction which would indict the corporation and its members for doing something contrary to the law. The provision in question, when read in connection with the entire articles, means nothing more than that the corporation should keep the payments for stock and assessments in any particular series separate and distinct from that of any other series.

It has long been held by this court that the capital stock of the corporation is a trust fund for the benefit of creditors. This doctrine is so firmly established that the cases supporting it need not be here assembled. The assessments, being made under the articles of incorporation and the by-laws made in pursuance thereof, created a fund which the creditors of the corporation, in the event of insolvency, had a right to rely upon. In *Johns v. Clother,* 78 Wash. 602, 139 Pac. 755, it was held that a stock subscription whereby a subscriber agreed to pay $5 per share over and above the par value to be credited to a trust fund was legal and binding both as to the corporation and creditors, where the surplus-fund was intended as an additional asset upon which creditors could rely. In that case there was a written contract. In the present case there is no written contract, but the holders of the stock in the corporation are bound by the provisions of the articles and by-laws. Until after insolvency, the evidence shows it was never claimed by anyone that the assessments were to be treated as a trust fund and not as an asset of the corporation. Credit was obtained by statements furnished by the corporation in which the assessments were included as a part of the assets. Annually, at the time of the stockholders' meeting, similar statements were sent to the stockholders.

This is not a case where an assessment is attempted to be made against the stockholders without previous

authorization on their part, as are some of the cases cited by the appellant. Where the articles of incorporation authorize an assessment upon its capital stock, it may be levied and collected, notwithstanding the fact that the stock has been fully paid. In *Huxtable v. Berg,* 98 Wash. 616, 168 Pac. 187, it was said:

"Where the articles of incorporation, or the statute, authorize an assessment upon such stock, it may be levied and collected, notwithstanding the fact that it is fully paid." (Citing cases.)

In the present case, the respondent is seeking to recover only upon those assessments which had been made and which were unpaid at the time of his appointment as receiver. The question whether the receiver, under the authority of the court, has a right to make other assessments is not involved in this action and no opinion is expressed thereon.

The judgment will be affirmed.

TOLMAN, C. J., ASKREN, and PARKER, JJ., concur.