SIMONS *v.* GROESBECK.

BACKUS *v.* CONNOLLY.

1. BANKS AND BANKING — STOCKHOLDER'S LIABILITY — STATUTES — CONTRACTS.

Bank stockholder's liability to the bank is primarily based upon statute but is also contractual so that legislature may not impair such obligation by taking it away once it has accrued or attached, it being an asset of the bank (12 USCA, §§ 63, 64, 66; 3 Comp. Laws 1929, § 11945).

2. SAME—HOLDING COMPANIES—STOCKHOLDER'S LIABILITY.

Holding companies authorized to hold stock in State and national banks are subject to assessments on such stock as the owners thereof under State and Federal statutes (12 USCA, §§ 63, 64, 66; 2 Comp. Laws 1929, § 9968; 3 Comp. Laws 1929, § 11945).

3. CORPORATIONS—HOLDING COMPANIES—ASSESSMENT ON STOCK.
   Assessment on capital stock of holding company provided for in articles of association which were referred to on face and printed on reverse of stock certificate is enforceable against owner thereof since he took it with knowledge of such liability which is neither prohibited by statute nor contrary to public policy.

4. SAME—DUTY OF RECEIVER.
   Receiver of insolvent corporation should not be enjoined from performance of duty of collecting assets and paying proved debts.

5. CONTRACTS—ACCEPTANCE—LIABILITY FOR ASSESSMENT ON .STOCK.
   Acceptance of certificate of stock of holding company upon face of which reference was made to articles of association printed on back thereof and providing for assessments, constituted assent to provisions of an express contract.

6. CORPORATIONS—STOCK AND STOCKHOLDERS—CONSENT TO ASSESSMENT.
   Although generally stockholders of bankrupt corporation are not subject to assessment on stock, where charter, articles of association, or statute provide for one, or stockholders consent to it upon fully paid-up stock, such liability is enforceable.

7. SAME—STOCK ASSESSMENT.
   Stockholders may voluntarily agree to assess themselves for the betterment of the corporation even though such assessment may not be authorized by statute.

8. SAME—RECEIVERS—ASSESSMENT.
   Assessment on capital stock of holding company, owning bank and trust company stock and authorized by articles of association of which the stockholders had notice, may be levied and collected by receivers although stock has been fully paid up, since it is an asset of the corporation.

Appeal from Wayne; Miller (Guy A.), J. Submitted August 10, 1934. (Docket Nos. 137, 138, Calendar Nos. 37,970, 37,971.) Decided September 18, 1934. Rehearing denied October 23, 1934.

Separate bills by Nathan Simons and others against Alexander J. Groesbeck, receiver of Guard-

ian Detroit Union Group, Inc., a Michigan corporation, and by Henry N. Backus and others against William F. Connolly, receiver of Detroit Bankers Company, a Michigan corporation, to restrain collection of assessments on stock. Bills dismissed. Plaintiffs appeal. Affirmed.

*William Alfred Lucking* and *Lucking, VanAuken & Sprague,* for plaintiffs.

*A. W. Sempliner,* for defendant Groesbeck.

*Wm. Henry Gallagher* and *A. W. Sempliner,* for defendant Connolly.

POTTER, J.   These suits involving substantially the same questions will be disposed of together. In one, plaintiffs, owners of the common stock of the Detroit Bankers Company, a corporation organized under Act No. 84, Pub. Acts 1921, filed their bill of complaint against William F. Connolly, receiver of the Detroit Bankers Company, alleging they are owners of the stock in the Detroit Bankers Company. The certificates of stock held by plaintiffs recite:

"This certificate and the shares of stock represented thereby, and the rights of the owner thereof, are subject to the provisions of those parts of the articles of association of this company, which appear on the reverse hereof."

On the back of each certificate of stock is the following, quoted from the articles of association of the Detroit Bankers Company:

"(A)   The holder of each share of common stock of this corporation shall be individually and severally liable for such stockholder's ratable and pro-

portionate part (determined on the basis of their respective stockholdings of the total issued and outstanding stock of this corporation) for any statutory liability imposed upon this corporation by reason of its ownership of shares of the capital stock of any bank or trust company, and the stockholders of this company—by the acceptance of their certificates of stock of this company—severally agree that such liability may be enforced in the same manner and to the same extent as statutory liability may now or hereafter be enforceable against stockholders of banks or trust companies under the laws under which said banks or trust companies are organized or operate. A list of the stockholders of this company shall be filed with the banking commissioner of Michigan or the comptroller of the currency, whenever requested by either of those officers.

"(B)  The stock of the corporation authorized by these articles and any stock of this corporation authorized by any certificate of increase of the capital stock may be issued and disposed of by the board of directors to such persons, firms, corporations or associations in exchange for capital stock and/or assets of banks, trust companies or other corporations or associations included within the provisions of article 3 and upon such terms as the board of directors in their discretion may determine. In any of such instances no holder of any stock of this corporation shall be entitled, as of right, to subscribe for, purchase or receive any proportionate or other share of stock so to be issued. In case, however, the board of directors shall determine to issue any stock of the corporation created by these articles or by any certificate of increase of the capital thereof, for any other purpose than exchange as aforesaid, the holders of common stock of this corporation shall first be entitled to subscribe for, purchase and receive such stock to be issued, ratably and at such price and up-

on such terms as may be fixed from time to time by the board of directors.  *    *    *

"(D)   No substantial part of the shares of the capital stock at any time owned by this corporation in any of the following named institutions:

> Peoples Wayne County Bank
> First National Bank—Detroit
> Detroit & Security Trust Company
> Bank of Michigan
> Peninsular State Bank

shall be mortgaged, pledged or sold, nor shall consent be given to the mortgage, pledge or sale of the property or business of any of said institutions except by and with the vote of at least two-thirds of all of the outstanding shares of the common stock and until December 31, 1934—of a like proportion of the trustee stock."

By exchange of stock the Detroit Bankers Company acquired controlling interest in the capital stock of the First National Bank—Detroit, Peoples Wayne County Bank, Detroit & Security Trust Company, Bank of Michigan, Peninsular State Bank and 14 other banks.   The First National Bank—Detroit, organized under the national banking act (12 USCA, § 21 *et seq.*), was closed by proclamation of the President of the United States, March 6, 1933, and C. O. Thomas was appointed receiver therefor, by the comptroller of currency, May 12, 1933, and has since been acting as such.   The national banking act provides (12 USCA):

"SEC. 63.   The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their

stock therein, at the par value thereof, in addition to the amount invested in such shares.  *  *  *

"SEC. 64. Individual liability of shareholders; transfer of shares. The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagement of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure. (Dec. 23, 1913, c. 6, § 23, 38 Stat. 273.)  *  *  *

"SEC. 66. Personal liability of representatives of stockholders. Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name. (R. S. § 5152.)''

All of the stock of plaintiffs in the First National Bank—Detroit was transferred to the Detroit Bankers Company more than 60 days prior to its being closed by presidential proclamation. The Detroit Bankers Company May 10, 1933, was dissolved and William F. Connolly appointed receiver therefor. The trial court held that upon his appointment as

receiver of the Detroit Bankers Company, defendant Connolly as such became entitled to all the property and assets of the Detroit Bankers Company; that the liability imposed upon the stockholders thereof by the provisions of its articles of association constituted an asset of the Detroit Bankers Company; that the Detroit Bankers Company became legally liable under the national banking act to the receiver of the First National Bank—Detroit to an assessment of 100 per cent. of the par value of the capital stock of the First National Bank—Detroit held by it. It held substantially the same thing as to the liability of the Detroit Bankers Company as the holder of the stock of the Peoples Wayne County Bank under the banking law of the State of Michigan, and that such liability was to be enforced by defendant Connolly, receiver of the Detroit Bankers Company.

The other case involved similar questions growing out of alleged stockholders' liability in the Guardian Detroit Union Group, Inc., the certificates of stock in which provide:

"This certificate is issued subject to all of the provisions of the company's articles of association as amended article 9 of which containing certain special provisions respecting the rights and liabilities of stockholders of this company appears on the reverse of this certificate. Each holder of this certificate shall be deemed by the acceptance thereof to have assented to all such provisions."

And article 9 of whose articles of association provides:

"The holders of stock of this corporation shall be individually and severally liable (in proportion to the number of shares of its stock held by them re-

spectively) for any statutory liability imposed upon this corporation by reason of its ownership of shares of the capital stock of any bank or trust company, and the stockholders of this corporation by the acceptance of their certificates of stock of this corporation severally agree that such liability may be enforced in the same manner as statutory liability may now or hereafter be enforceable against stockholders of banks or trust companies under the laws of the United States or the State of Michigan. A list of the stockholders of this corporation shall be filed with the banking commissioner of Michigan and the comptroller of the currency whenever requested by either of those officers.

"This corporation reserves and shall have the right from time to time upon the affirmative vote of three-fourths of its directors to issue and dispose of all or any of its unissued or increased stock for the purpose of acquiring stock of banks, trust companies and other corporations without offering to the stockholders of this corporation for subscription any of the stock so to be disposed of."

Copies of article 9 from the articles of association are printed on the reverse side of its certificates of stock. The Guardian Detroit Union Group, Inc., acquired by exchange of its stock therefor, considerable stock in Highland Park State Bank, Highland Park Trust Company, Bank of Dearborn, National Union Bank & Trust Company of Jackson, Federal Commercial & Savings Bank of Port Huron, First National Bank & Trust Company of Port Huron, and many other banks in Michigan. The Guardian Detroit Union Group, Inc., acquired the capital stock of the Union Commerce Corporation which owned and controlled the capital stock of the National Bank of Commerce, a national banking institution, and May 12, 1933, B. C. Schram was appointed receiver

of the Guardian National Bank of Commerce, by appointment by the comptroller of the currency of the United States. Alexander J. Groesbeck, May 29, 1933, was appointed permanent receiver of defendant Guardian Detroit Union Group, Inc. The trial court made the same holding, as to the liability of the stockholders in the Guardian Detroit Union Group, Inc., its liability to assessment and the duty of its receiver, Alexander J. Groesbeck, as it made in the other case. The court holding in both cases it was the duty of the receiver to enforce the liability of the stockholders in each of the said holding companies. From the decree entered plaintiffs appeal. The controlling questions presented by appellants are stated by appellants and conceded by appellees to be:

1. Is there a primary statutory liability of the holding companies under the national banking act, and the Michigan banking act, by reason of their ownership of bank shares—that is, a purely statutory liability,—and if so,

2. Is there a secondary contractual liability of the stockholders of the holding companies under the provisions of article 9 of their articles of association, that is, a purely contractual liability depending for its enforcibility upon the power or right of the holding companies to make such a contract of proportionate liability with their stockholders, and whether the holding companies are first and primarily liable themselves for any statutory liability upon the corporations by reason of their ownership of shares of the capital stock of the banks and trust companies involved herein?

The liability of the stockholders of a bank to the bank itself is a primary liability based upon statute, but it is not strictly a statutory liability. It is con-

tractual in its nature, so much so that the legislature has been regarded as prohibited by the constitutional prohibition against impairing the obligation of contracts from taking away the stockholders' liability after it has once accrued or attached. This statutory stockholders' liability is a part of the assets of the insolvent bank and consequently a liability upon the part of the holders of its stock.

The liability of the stockholders of the banks here concerned is a primary liability imposed upon stockholders by the statutes of the United States and of this State (3 Comp. Laws 1929, §§ 11945, 12024). 6 Thompson on Corporations, § 4812. The holding companies here involved were owners of such bank stock. They were authorized by statute to hold it. 2 Comp. Laws 1929, § 9968. The holding companies were each liable to an assessment on that stock as the owners thereof under the statutes of the United States and of this State. The articles of association of each of the holding companies here concerned provided for an assessment upon the capital stock of such company. The provisions of the articles of association relating thereto are referred to on the face of the stock certificates and printed in full on the back of such certificates so that every person who purchased or acquired the stock in such holding companies took and acquired it with knowledge of the stockholders' liability thereon. This agreement for liability is contractual. It is not prohibited by statute nor contrary to public policy and we see no reason why it may not be enforced. This contractual stockholders' liability is just as much a trust fund for the benefit and protection of the creditors as the capital stock of the corporation itself. One of the usual and ordinary duties of the receiver of an insolvent corporation is to reduce its corporate assets

to possession for the payment of the debts proved and established against it, and a receiver of the court ought not to be enjoined from the performance of a duty which the law imposes upon him. It seems fundamental that, regardless of statutory authority therefor, the stockholders of a corporation may agree to be liable for the superadded liability that the terms of article 9 of the corporate articles of the association of each of the holding companies here imposes. Every person who purchased or acquired stock in such holding companies had notice and knowledge of such superadded liability and agreed to it and became bound by it upon acquiring his stock. *Crawford* v. *Edwards,* 33 Mich. 354; *Winans* v. *Wilkie,* 41 Mich. 264; *Terry* v. *Durand Land Co.,* 112 Mich. 665; *People, ex rel. Attorney General,* v. *Railroad Co.,* 145 Mich. 140. The law itself does not impose this contractual liability upon the parties, but the acceptance of the certificates of stock by those who purchased or acquired it, constitutes an assent to the terms and conditions of the contract as expressed in the articles of association, which contract is an express one. *People, ex rel. Attorney General,* v. *Railroad Co., supra.* The liability to respond to the obligation imposed is statutory.

"As the stockholders' liability rests upon a contract entered into by himself, why should the receiver, on the principle of comity, not be permitted to sue in our courts upon that contract just as he would be permitted to sue on a promissory note?" *Good* v. *Starker,* 207 Wis. 567, 575 (242 N. W. 204).

While it is generally true that the holders of the bankrupt corporate stock are not liable to assessment, yet where the power to make such assessment upon fully paid-up stock is conferred by corporate

charter or by the articles of association of the corporation or by a valid statute or by consent of the stockholders or members of the corporation, such liability is enforceable. 2 Clark & Marshall, Private Corporations, § 402; *Mirage Irrigation Co.* v. *Sturgeon,* 77 Neb. 175 (108 N. W. 977).

Stockholders can agree that an assessment can be levied on their stock; they may voluntarily assess themselves for the betterment of the corporation, even though such assessment may have no statutory warrant or authority. *Harris* v. *Northern Blue Grass Land Co.,* 185 Fed. 192; *Good* v. *Derr* (C. C. A.), 46 Fed. (2d) 411; 1 Cook on Corporations (8th Ed.), § 76.

Where the articles of association of a corporation authorize an assessment upon its capital stock, such assessment may be levied and collected, notwithstanding the stock has been fully paid. *Huxtable* v. *Berg,* 98 Wash. 616 (168 Pac. 187); *Melville* v. *Rhodes,* 136 Wash. 220 (239 Pac. 560); 14 C. J. p. 845, § 1286. This is in accordance with the general rule. This superadded liability, fixed by the articles of association of the holding companies here concerned, constitutes a liability upon the part of the stockholders and an asset upon the part of the corporation to be collected by the respective receivers therefor. Such receivers ought not to be enjoined from the performance of their duty. The decree of the trial court is affirmed, with costs.

North, Wiest, Butzel, and Edward M. Sharpe, JJ., concurred. Nelson Sharpe, C. J., and Fead and Bushnell, JJ., did not sit.