## ULLRICH et al. v. THOMAS.
### No. 6900.

Circuit Court of Appeals, Sixth Circuit.
Nov. 11, 1936.

W. A. Lucking, of Detroit, Mich. (Lucking, Van Auken & Sprague, of Detroit, Mich., and Lungerhausen, Weeks, Lungerhausen & Neale, of Mt. Clemens, Mich., on the brief), for appellants.

Robert S. Marx, of Cincinnati, Ohio (Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

This case presents another phase of the same general circumstances involved in Barbour v. Thomas et al. (Connolly, Receiver, v. Thomas, Receiver) 86 F.(2d) 510 (C.C.A.), Nos. 7116 and 7117, this day decided.

Appellants were common stockholders in the Detroit Bankers Company, herein called the holding company. They acquired their stock prior to January 1, 1931, by exchange for shares of the Detroit Trust Company and the Bank of Michigan, component units of the holding company.

They were without objection permitted to intervene and file a motion to dismiss the cross-bill of Receiver Thomas. The grounds were that the receiver had an adequate remedy at law and that because of averments in the cross-bill that the First National Bank-Detroit (herein called the bank) was unlawfully constituted, he had no rights against appellants as stockholders thereof. The motion was overruled, appellants answered, and raised the same point made by the motion to dismiss. We need not therefore determine the preliminary question of appellants' right of intervention. Other defenses were common to those determined in cases Nos. 7116 and 7117. The court ren-

dered judgments against appellants upon the assessments which they sought to avoid and from this decree they appealed.

The specific contention was that, by authority of Backus v. Connolly, 268 Mich. 495, 256 N.W. 496, the holding company was the real owner of the stock of the bank and that appellants were therefore not liable for assessments thereon. Upon this feature it is sufficient to restate our conclusion reached in cases Nos. 7116 and 7117, that the holding company, as between it and the creditors and depositors of the bank, was not the real owner of its stock.

■ But appellants point out: That the bank represented a consolidation of the Peoples Wayne County Bank and the First National Bank in Detroit, both of them at the time being units of the holding company; that the consolidation was voted by the holding company, the stockholder of record of each institution; that if the holding company was not the actual owner of the stock of the bank it was not the real owner of the stock of these constituent units and that its vote to consolidate them was a nullity, the organization of the bank void and the receiver represented no legally constituted bank upon the stock of which a levy could be assessed or collected.

We find nothing in the decision in Backus v. Connolly to the effect that the beneficial owners only of these corporations could vote their merger. On the other hand, it is specifically provided by article IX D-1 of the holding company's charter that the consolidation might be made by a vote of its board of directors. However, the validity of the organization of the bank could not be made an issue. This defense is an attempt collaterally to attack the authority upon which it was allowed to do business and cannot be permitted. See Casey v. Galli, 94 U.S. 673, 24 L.Ed. 168; Benedict v. Anderson, 70 F.(2d) 227, 229 (C.C.A.6); Benson v. Sullivan, 67 F.(2d) 708 (C.C.A.7).

■ The bank was a very large one. It had more than $500,000,000 on deposit and over 800,000 depositors. As pointed out in cases Nos. 7116 and 7117, appellants, in common with other stockholders of the holding company, received dividends from it through the holding company. Their acceptance of holding company certificates with article IX-A printed thereon was a recognition of their liability for assessments as the actual owners of the stock of the bank which they may not now repudiate by the claim that, after all, the bank was really nonexistent. Moreover, the status of the receiver differed from that of the ordinary receiver. He did not derive his power from the bank. As applicable here, he was the agent of the government, appointed by the Comptroller for the purpose of enforcing the individual liability of the shareholders of the bank and paying over the proceeds into the Treasury, subject to the order of the Comptroller. Port Newark Natl. Bank of Newark v. Waldron, 46 F.(2d) 296, 298 (C.C.A.3); Liberty Natl. Bank v. McIntosh, 16 F.(2d) 906, 910 (C.C.A.4); Hulse v. Argetsinger, 18 F.(2d) 944 (C.C.A.2).

■ Appellants further contend, that laying aside the matter of collateral attack, the receiver was bound by the averments of his cross-bill that the holding company was illegally organized and that it follows therefore that the organization of the bank by the vote of the holding company was likewise illegal. We have examined the allegations of the cross-bill and find none to the effect that the organization of the holding company was illegal. Upon the other hand, there is a specific averment that it was organized under the laws of Michigan for the purposes set forth in the third article of its charter. The cross-bill does contain averments that the holding company was to be used for illegal pursuits. But we need not determine the effect of these allegations, since the cross-bill otherwise presents a sufficient state of facts, which, having been found true, entitle appellee to the relief granted. The contention that equity was without jurisdiction because appellee had an adequate remedy at law is unavailing, first, because appellee was enjoined from enforcing the assessments at law; second, because an accounting was required to determine the interests of appellants in the bank as represented by their holding certificates; and, third, because the cross-bill was permissible under Equity Rule 23, 28 U.S.C.A. following section 723. See Howard v. Leete, 257 F. 918, 922 (C.C.A.6).

The decree is affirmed.