### SCHRAM v. POOLE.
### No. 8679.

Circuit Court of Appeals, Ninth Circuit.
June 16, 1938.

Olson & Olson and Richard C. Olson, all of Los Angeles, Cal., and Robert S. Marx, of Cincinnati, Ohio, for appellant.

Farrand & Slosson, George E. Farrand, Leonard B. Slosson, and Edward W. Tuttle, all of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appeal has been taken by appellant, as receiver of an insolvent national banking association, from a decree dismissing a bill of complaint filed to recover liability of shareholders, and from an order denying motions made by appellant to set aside the decree, and for leave to amend the bill.

In 1929, stockholders of The First National Bank in Detroit, a national banking association, and Peoples' Wayne County Bank, Peninsular State Bank, and Bank of Michigan, Michigan banking corporations, and Detroit & Security Trust Company, a Michigan trust company, conceived a plan to consolidate their stockholdings in various corporations, by organizing a Michigan corporation to acquire the stock of the aforementioned corporations. The boards of directors of the corporations met separately on September 27, 1929, and recommended the plan to the stockholders. Barbour v. Thomas, 6 Cir., 86 F.2d 510, 511.

A written agreement was prepared, which provided that each stockholder appointed, as his agent and attorney, a committee of twelve men, consisting of two representatives of each of the aforementioned corporations, and authorized the committee to organize a holding corpora-tion. More than 97% of the stockholders of the corporations signed the agreement, either individually or by an authorized agent.

The committee, as sole incorporators, pursuant to the agreement and plan, organized the Detroit Bankers Company, under the laws of Michigan. Articles of association were filed on January 8, 1930. The purpose of the corporation as stated therein was to acquire, hold and sell stock of banks and trust companies. The capital authorized was $50,000,000, divided into 2,-500,000 shares of common stock having a par value of $20 per share and 120 shares of no par value "trustee" stock, which was the only voting stock for a specified time. The articles of association also contained the following provision: "The holder of each share of common stock of this corporation shall be individually and severally liable for such stockholder's ratable and proportionate part (determined on the basis of their respective stockholdings of the total issue and outstanding stock of this corporation) for any statutory liability imposed upon this corporation by reason of its ownership of shares of the capital stock of any bank or trust company, and the stockholders of this company, by the acceptance of their certificates of stock of this company, severally agree that such liability may be enforced in the same manner and to the same extent as statutory liability may now or hereafter be enforceable against stockholders of banks or trust companies under the laws under which said banks or trust companies are organized or operate. A list of the stockholders of this company shall be filed with the Banking Commissioner and the Comptroller of the Currency, whenever requested by either of those officers."

The members of the committee each subscribed for 10 shares of the trustee stock, and elected themselves directors of the holding company. The directors held their first meeting on January 9, 1930. Thereafter, practically all of the various stockholders, in five corporations, first mentioned, exchanged their stock in such corporations, for stock in the holding company. On the face of the certificates issued by the holding company to such stockholders, there was printed the substance of the provision of the articles of association, and on the back of such certificates, there was printed the full text of the provision except the last sentence.

The holding company caused the merger and consolidation of The First National

Bank in Detroit, Peoples Wayne County Bank, Peninsular State Bank and Bank of Michigan into The First National Bank-Detroit. During the holding company's existence, it also acquired control or ownership in about 20 other banks, trust companies and financial institutions.

On February 11, 1933, The First National Bank-Detroit closed its doors. On February 14, 1933, the Governor of Michigan declared a banking holiday, effective to February 21, 1933, upon which day he permitted the opening of banks for limited purposes. On March 6, 1933, the President proclaimed the suspension of banking activity to and including March 9, 1933, and on the latter day extended the suspension. On March 13, 1933, the Comptroller of the Currency appointed one Keys conservator for the bank. On March 20, 1933, the holding company filed a list of its stockholders with the Comptroller of the Currency.

On March 21, 1933, one Thomas succeeded Keys as conservator. On May 10, 1933, one Connally was appointed receiver of the assets of the holding company in a Michigan state court, and a decree was therein entered dissolving that company. On the following day, the Comptroller of the Currency, having found that The First National Bank-Detroit was insolvent, appointed Thomas receiver of such bank.

On May 16, 1933, the Comptroller of the Currency levied an assessment upon the shareholders of The First National Bank-Detroit for $25,000,000, being a 100% assessment, due June 23, 1933, and on June 20, 1933 extended the due date to July 14, 1933, and on July 13, 1933 again extended the due date, to July 31, 1933.

On June 12, 1933, one Backus and others who were stockholders of the holding company filed in a Michigan state court suit against Connally, as receiver for the holding company, apparently to enjoin Connally from attempting to enforce against them liability for assessments against the holding company. The state court held that the stockholders of the holding company were liable for the assessments against the holding company. Appeal was then taken to the Supreme Court of Michigan.

On July 12, 1933, one Barbour and some 30 others, who were stockholders of the holding company, filed a suit in a United States District Court in Michigan against Thomas as receiver for The First National Bank-Detroit to enjoin Thomas from enforcing against them any liability of the holding company upon the assessments. Other stockholders of the holding company intervened. The total amount of stock represented in the suit was over $4,000,000. It was brought as a class action on behalf of all the holding company's stockholders. Thomas filed a cross-complaint alleging that such stockholders were liable on the assessment. The District Court sustained the cross-complaint (Barbour v. Thomas, 7 F. Supp. 271), and the stockholders appealed to the Circuit Court of Appeals.

Schram succeeded Thomas as receiver of The First National Bank-Detroit, on August 15, 1934.

On September 18, 1934, the Supreme Court of Michigan affirmed the decree in the state court suit. It held that the liability of the holding company for the assessment was primarily based upon the statute, but was contractual in its nature; that the acceptance of the certificates of stock in the holding company by the stockholders thereof constituted "an assent to the terms and conditions of the contract as expressed in the articles of association, which contract is an express one"; and that Connally, as receiver of the holding company, could sue upon and enforce the contract. Simons v. Groesbeck, 268 Mich. 495, 256 N.W. 496.

On November 11, 1936, the Circuit Court of Appeals affirmed the decree rendered in the class suit brought against Thomas. It held that the stockholders of the holding company were the "actual owners" of the bank stock. Referring to the decision of the Supreme Court of Michigan, the court said: "We have no quarrel with the ruling that, as between the stockholders of the holding company and its receiver, article IX-A [quoted above] constitutes a contractual obligation". Barbour v. Thomas, 6 Cir., 86 F.2d 510, 517, certiorari denied 300 U.S. 670, 57 S.Ct. 513, 81 L.Ed. 877. Another opinion regarding interveners in that suit was handed down the same day. Ullrich v. Thomas, 6 Cir., 86 F.2d 678, certiorari denied 301 U.S. 692, 57 S.Ct. 794, 81 L.Ed. 1348.

On May 12, 1936, Schram, as receiver of The First National Bank-Detroit, filed in the court below a bill against appellee, "John Hudson Poole, individually and as Guardian of the Person and Estate of John Hudson Poole, Jr., a minor".

The bill alleged most of the facts above related and that appellee was appointed guardian of the person and estate of the

minor by a California state court in 1932; that appellee had in his hands estate and funds of the minor valued at about $1,000,-000; and that prior to February 11, 1933 and at all times since, the minor's estate included 900 shares of the stock of the holding company, represented by nine certificates for 100 shares each, "all registered in the name of John Hudson Poole, Guardian of John Hudson Poole, a minor". The allegations of the bill are broad, and allege facts sufficient to impose liability on the owner of the stock in question, (1) by disregarding the corporate entity of the holding company, (2) by considering the holding company as holding the bank stock as agent for the stockholders of the holding company, (3) by estoppel of appellee to deny liability, and (4) by allegations that "each and every one of the shareholders of said Detroit Bankers Company by the acceptance of their certificates of stock of said Detroit Bankers Company, entered into a contract whereby they severally agreed to pay their ratable and proportionate part of any assessment levied by the Comptroller of the Currency upon the shareholders of record of the capital stock of said First National Bank-Detroit; that there was a good and valid consideration therefor; all of the parties necessary to the making of said contract imposing said liability upon the stockholders of the Detroit Bankers Company, and in favor of and for the benefit of the creditors of First National Bank-Detroit were parties to said contract."

The bill further alleges that by "virtue of the foregoing, and the provisions of Sections 5151 and 5152 of the United States Revised Statutes (12 U.S.C.A. §§ 64 and 66) the defendant John Hudson Poole, as Guardian of the Person and Estate of John Hudson Poole, Jr., a minor, became liable for that portion of said assessment liability represented by the" 900 shares of stock in question, and had failed to pay the same; and that the assessment amounted to $14.-055775 for each of the 900 shares.

On July 6, 1936, appellee, as guardian, filed an answer which consisted mostly of denials, but did admit appellee's appointment as guardian on April 8, 1932, and alleged that the shares of stock in the holding company "constituted part of the corpus of a trust which was terminated in the year 1932, at which time said shares of stock by the termination of and pursuant to the terms of the said trust became the property of the said minor John Hudson Poole, Jr.,

and were in August, 1932, registered in the name of John Hudson Poole, as guardian of John Hudson Poole, Jr., said minor". On the same day, appellee, in his individual capacity, filed a motion to dismiss, based on two grounds: (1) The bill failed to state facts sufficient to entitle the receiver to relief; and (2) appellee, individually, was improperly joined. That motion was sustained on November 24, 1936.

On March 10, 1937, appellee, as guardian, filed a motion to dismiss the bill, on two grounds: (1) The bill failed to state facts sufficient to entitle the receiver to any relief; and (2) the minor, an indispensable party, was not joined. On May 5, 1937, the court below, by minute order granted the motion. On May 7, 1937, a decree was entered dismissing the bill.

On May 13, 1937, the receiver filed a motion for an order granting leave to amend the bill by making the minor a party to the suit. On the same day, the receiver filed a motion for an order vacating the minute order and the decree, for reinstatement of the bill, and for a rehearing of the motion to dismiss. The receiver filed another motion for the same relief on the same day, basing it on grounds some of which differed from those in the other motion. Finally, on the same day, the receiver filed a motion to vacate the decree dismissing the bill as to appellee in his individual capacity. Apparently the motions were denied on June 22, 1937.

The receiver petitioned for and was allowed an appeal from the decree of dismissal entered May 7, 1937, and from the order denying the motions. At the outset we say that we believe no appeal lies from the latter order, in the absence of an abuse of discretion by the court below. Beers v. Equitable Trust Co., 8 Cir., 286 F. 883; Conboy v. First Nat. Bank of Jersey City, 203 U.S. 141, 145, 27 S.Ct. 50, 51 L.Ed. 128.

It can be seen that the receiver is attempting to enforce the liability by two methods: (1) By considering appellee as the actual shareholder of the bank, under several theories, and invoking the statute imposing the liability directly; and (2) by considering the holding company as the actual stockholder, and appellee liable by virtue of a contract expressed in the articles of incorporation and contained on the stock certificates. For convenience, we discuss the first method as the direct method, and the second as contract liability.

## The Direct Method

The statute imposing liability (12 U.S.C.A. § 64) on the shareholders of a national bank provides in part: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. * * *"

In 12 U.S.C.A. § 66, it is provided: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

■ Section 66 "creates an unsecured and unpreferred claim against a" ward's estate. Pufahl v. Estate of Parks, 299 U.S. 217, 224, 57 S.Ct. 151, 155, 156, 81 L.Ed. 133. It exempts from personal liability the guardian who holds stock as such, whether the stock stands in his name or that of the ward. Page 223, 57 S.Ct. page 155; Forrest v. Jack, 294 U.S. 158, 162, 55 S.Ct. 370, 371, 79 L.Ed. 829, 96 A.L.R. 1457. The ward has no personal liability for want of capacity to assume the obligation.[1] Seabury v. Green, 294 U.S. 165, 168, 55 S.Ct. 373, 375, 79 L.Ed. 834, 96 A.L.R. 1463; Early v. Richardson, 280 U.S. 496, 499, 50 S.Ct. 176, 74 L.Ed. 575, 69 A.L.R. 658; Cal. Civ.Code, §§ 33, 34.

■ The substantive right against the ward's estate, arising out of the statute (Pufahl v. Estate of Parks, supra, page 227, 57 S.Ct. page 157), the enforcement of which "may not be thwarted or impeded by state law" (Seabury v. Green, supra, page 169, 55 S.Ct. page 375), may be enforced "only in conformity to the law of the forum governing the recovery of debts of like nature" (Pufahl v. Estate of Parks, supra, page 225, 57 S.Ct. page 156). Where, as here, the res against which the claim is asserted is in the possession or under control of a state court, and the receiver brings an action or suit in the federal court on the claim, the federal court "can do no more than adjudicate the validity and amount of his claim". Page 226, 57 S.Ct. page 156.

■ Since the receiver is seeking such an adjudication here, the law of California governs the trial of the case, the California statute of limitations is applicable, and the California "substantive law governing property rights in stock will be observed". Pufahl v. Estate of Parks, supra, page 225, 57 S.Ct. page 156.

■■ Here the receiver has a substantive right—the right to obtain the amount of the assessment from the estate of the ward in the hands of the guardian. Inasmuch as the federal statute does not specify what remedy is to be used, or how the substantive right is to be enforced, to determine those questions, we think we must apply the law of California. The receiver's contention to the contrary was, we believe, disapproved in Pufahl v. Estate of Parks, supra. Cf. Erie Railroad Co. v. Tompkins, 58 S.Ct. 817, 82 L.Ed. ——, 114 A.L.R. 1487, April 25, 1938; Ruhlin v. New York Life Ins. Co., 58 S.Ct. 860, 82 L.Ed. ——, May 2, 1938.

■ In California, the guardian "must pay the ward's just debts". Probate Code, § 1501. A claim for such a debt need not be presented to the guardian, and if presented, need not be verified nor approved by the court before payment. Guardianship of Breslin, 135 Cal. 21, 22, 66 P. 962; Racouillat v. Requena, 36 Cal. 651, 656; 13 Cal.Jur. 178, § 32. "The superior court sitting in probate has no jurisdiction to hear and determine a disputed claim against the guardian or the estate", but such a claim "is the proper subject of a civil action, and can be legitimately brought before a court only by such action". Guardianship of Breslin, supra, page 22, 66 P. page 962. See, also, Swift v. Swift, 40 Cal. 456; Walters v. Superior Court, 129 Cal.App. 19, 18 P.2d 343; 13 Cal.Jur. 189, § 41.

■ Since such a proceeding as the one in question is one not in rem but in personam (Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 619, 56 S.Ct. 600, 602,

---

[1] There is here no allegation or contention that personal liability was imposed on the minor by virtue of acceptance of the stock by the guardian pursuant to order of the probate court. Compare: Fish v. McCarthy, 96 Cal. 484, 485, 31 P. 529, 31 Am.St.Rep. 237; Morse v. Hinckley, 124 Cal. 154, 56 P. 896; Wright v. Byrne, 129 Cal. 614, 62 P. 176; McKee v. Hunt, 142 Cal. 526, 77 P. 1103; County of Los Angeles v. Winans, 13 Cal.App. 234, 254, 109 P. 640; Calif. Probate Code, §§ 1400, 1512, 1557; 28 C.J. 1165 § 281.

80 L.Ed. 920), appellee contends that the estate in his hands cannot be bound, unless the minor is made a party. We believe that such is the rule in California. See Emeric v. Alvarado, 64 Cal. 529, 593, 2 P. 418; Justice v. Ott, 87 Cal. 530, 25 P. 691; O'Shea v. Wilkinson, 95 Cal. 454, 456, 30 P. 588; Redmond v. Peterson, 102 Cal. 595, 598, 36 P. 923, 41 Am.St.Rep. 204; Loock v. Pioneer Title Ins., etc., Co., 4 Cal.App.2d 245, 40 P.2d 526. Compare Morgan v. Potter, 157 U.S. 195, 198, 15 S.Ct. 590, 39 L.Ed. 670. The reason for the rule is that trustees, executors and administrators hold title to the property, whereas guardians "simply stand in the position of protectors". Fox v. Minor, 32 Cal. 111, 117, 91 Am.Dec. 566. The guardian "was neither a necessary nor a proper party". Redmond v. Peterson, supra, page 598, 36 P. page 924.

The receiver contends that by filing an answer, appellee waived the right to raise the question regarding non-joinder of the ward, but we understand that the defect cannot be waived. O'Shea v. Wilkinson, supra.

The receiver also contends that the defect could be cured by amendment, and the court below should have granted leave to amend, on the theory that the amendment would have dated back to the beginning of the action, and thus would have avoided the statute of limitations. It is conceded that the statute of limitations has run,[2] unless the amendment relates back to the beginning of the suit. We think such an amendment would not relate back, however, but would be in effect the commencement of a new suit. Davis v. Cohen & Co., 268 U.S. 638, 642, 45 S.Ct. 633, 634, 69 L.Ed. 1129; Mellon v. Arkansas Land Co., 275 U.S. 460, 463, 48 S.Ct. 150, 151, 72 L.Ed. 372; Natoli v. Davis, 75 Cal.App. 309, 242 P. 895; Ingram v. Department of Industrial Relations, 208 Cal. 633, 284 P. 212.

The receiver relies on a line of cases, where an amendment introduces "no new or different cause of action" and is considered as relating back to the commencement of the action. See Missouri, Kan. & Tex. Ry. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355, Ann.Cas.1914B, 134. They are, we believe, not in point because there was not involved the equivalent of the commencement of a new suit.

The receiver also contends that since this is a suit in equity, the statute of limitations applies, if at all, only by analogy, and that the doctrine of laches should not here apply. We believe, however, that the statute of limitations applies both in actions and suits (Pufahl v. Estate of Parks, supra; Ruhlin v. New York Life Ins. Co., supra), as it would if the proceeding here were instituted in the California courts.

### The Contract Liability

The receiver further contends that a cause of action for breach of contract was pleaded. He says that upon acceptance of the stock a contract imposing liability arose, but makes no statement as to who was liable thereon. The statute of limitations (4 years) applicable to such actions (Cal. Code Civ.Proc., § 337) had not run at the time the decree was entered, or at the time the motions were made.

Appellee contends that the point was not presented to the trial court, and therefore we should not consider it. In like cases submitted to us and argued before us at the same time, arising in Arizona, the point was extensively argued. Under those circumstances, we think the point should be disposed of.

Appellee contends that the provision of the articles of association creates no liability, independent of statute, and simply is a contract that the holders of the holding company stock were the actual owners of the bank stock. We think the California courts would follow the construction given the article by the state creating the holding company. See 5 Cal.Jur. 465–468, §§ 39, 40. That state has, we believe, construed the article as creating an independent contractual liability (Simons v. Groesbeck, supra) and therefore we shall consider it as such.

There is here no allegation or contention that the guardian accepted the stock pursuant to order of court. Whether, if there had been such an order, the minor and his estate would have been bound, need not be determined. Cf. Calif. Probate Code §§ 1400, 1512, 1557; Hunt v. Maldonado, 89 Cal. 636, 27 P. 56; McKee v. Hunt, 142 Cal. 526, 77 P. 1103; 28 C.J. 1165, § 281.

We think that under the California law the guardian could not by entering into such a contract bind the minor or his estate, and that he bound himself individually. Fish v. McCarthy, 96 Cal. 484, 485, 31 P. 529, 31 Am.St.Rep. 237; Morse v. Hinckley, 124 Cal. 154, 56 P. 896; Wright v. Byrne,

---

2 Cal.Code Civ.Proc.., § 359; Johnson v. Greene, C.C.A.9, 88 F.2d 683.

129 Cal. 614, 62 P. 176; McKee v. Hunt, 142 Cal. 526, 77 P. 1103; County of Los Angeles v. Winans, 13 Cal.App. 234, 254, 109 P. 640; 28 C.J. 1165, § 281.

Since the minor or his estate was not bound, there would have been no reason to permit an amendment making him a party.

This proceeding was originally commenced against appellee individually, and as guardian. On November 24, 1936, the court below, by consent of the parties entered a decree dismissing the cause as to appellee individually. On May 13, 1937, the receiver moved to set aside that decree, which motion was denied on May 24, 1937. The receiver makes no contention that the decree of May 7, 1937, dismissing the bill was erroneous because the trial court should have permitted an amendment making appellee individually a party,[3] and hence, we express no opinion as to that question.

Affirmed.

---

[3] Likewise there is no contention that the words describing the capacity of appellee should be treated as descriptio personæ. See People v. Houghtaling, 7 Cal. 348; Burling v. Thompkins, 77 Cal. 257, 19 P. 429; In re Strong's Estate, Strong v. Burns, Cal.Sup., 74 P.2d 231; Scott v. Remley, 119 Cal.App. 384, 6 P.2d 536.